684 A.2d 1355

STATE OF NEW JERSEY, PLAINTIFF–APPELLANT, v.
BRUCE WALLACE, DEFENDANT–RESPONDENT.

Argued September 10, 1996—Decided November 13, 1996.

*Jack L. Weinberg,* Special Deputy Attorney General, Acting Assistant Prosecutor, argued the cause for appellant (*Joseph F.*

*Audino,* Special Deputy Attorney General, Acting Camden County Prosecutor, attorney; *Kathleen M. Higgins* and *Joan Spadea,* Special Deputy Attorneys General, Acting Assistant Prosecutors, of counsel and on the brief).

*Saul J. Steinberg* argued the cause for respondent (*Steinberg and Ginsberg,* attorneys).

*John E. Adams, Jr.,* Deputy Attorney General, argued the cause for amicus curiae Attorney General of New Jersey (*Peter G. Verniero,* Attorney General, attorney).

*Diane Toscano,* Assistant Deputy Public Defender, argued the cause for amicus curiae Public Defender (*Susan L. Reisner,* Public Defender, attorney).

The opinion of the Court was delivered by

HANDLER, J.

In this case, a county prosecutor denied a criminal defendant's request for admission to a pre-trial intervention program. The Appellate Division reversed and remanded the case to the prosecutor for reconsideration.

We are once again called upon to address the issue of how much deference a court must afford the discretionary prosecutorial decision concerning the refusal to dismiss criminal charges and the refusal to admit a criminal defendant into a pre-trial intervention program.

I

At approximately 10:20 a.m. on Saturday June 5, 1993, defendant Bruce Wallace, an attorney and Cherry Hill councilman, arrived at the home of his former girlfriend Paula Stewart with a loaded .357 Smith & Wesson handgun. The approximately six-year relationship between defendant and Stewart had formally ended some ten months prior to this date, but the two had occasional contact since that time. As Stewart was preparing to leave for an appointment, defendant produced the gun and in-

formed her that he had come to kill first her and then himself. Defendant was teary-eyed and, after looking at Stewart, realized that he could not do the intended act. He removed the gun and placed it on Stewart's microwave oven, telling her that he would never do anything to harm her. Defendant subsequently proceeded to unload the weapon. At no time did defendant point the loaded weapon at Stewart.

The June 5th incident was not an isolated event. Sometime during January, 1993, defendant and Stewart were having dinner together when defendant informed her that he had considered scheduling an appointment with Stewart's new boyfriend (a dentist) in order that he could cut the new boyfriend's throat. Stewart would later inform police that defendant had consistently threatened her new boyfriend. In April 1993, Stewart had received several urgent phone calls from defendant's psychiatrist warning her that defendant may attempt to harm either her person or her property. When Stewart failed to return the psychiatrist's calls, the psychiatrist warned the police. Approximately five weeks prior to the June 5th incident, defendant and Stewart apparently agreed that they would have no further contact.

Stewart reported the June 5th incident to the Voorhees Township Police Department. Defendant was arrested on June 8, 1993 and charged with second degree possession of a firearm for an unlawful purpose, contrary to *N.J.S.A.* 2C:39–4(a), and third degree making of terroristic threats, contrary to *N.J.S.A.* 2C:12–3. Although bail was initially set for $20,000, that condition was modified when defendant entered Hampton Hospital for immediate inpatient psychiatric treatment. Defendant was diagnosed as suffering from major depression with certain biochemical deficiencies, and he remained in the hospital for three weeks following his arrest. He was released to the after-care of Dr. Jeffrey Greenbarg.

In July 1993, with the charges pending against him, defendant requested that the police return both of the weapons seized from him at the time of his arrest. The request was denied.

On September 2, 1993, defendant filed an application for admission to the Camden County pre-trial intervention program (PTI). Eleven days later an assistant Camden County prosecutor informed defendant's counsel that his application had been rejected. By motion dated September 27, 1993, defendant appealed the prosecutor's decision in the Superior Court, Law Division. The trial court ruled that defendant had not met his burden of demonstrating that the prosecutor had committed a "patent and gross abuse of discretion" and therefore denied the motion.

On January 20, 1994, defendant pled guilty to third-degree unlawful possession of a handgun without a permit contrary to *N.J.S.A.* 2C:39-5b. On March 24, 1994, he was sentenced to a three year probationary term which included the following conditions: one hundred hours of community service, continued psychiatric evaluation and treatment if necessary, forfeiture of all weapons seized with a restriction on the future purchase of firearms, forfeiture of his seat on the Cherry Hill city council, avoidance of purposeful contact with the victim and a $1,000 fine. Defendant reserved his right to appeal the prosecutor's decision to reject his PTI application.

Defendant appealed the trial court's decision. The Appellate Division reversed the decision of the trial court and remanded the case to the prosecutor. We granted the State's petition for certification, 143 *N.J.* 323, 670 *A.*2d 1064 (1995), and now reverse.

II

We reviewed the history and overall structure of PTI most recently in *State v. Nwobu,* 139 *N.J.* 236, 245–49, 652 *A.*2d 1209 (1995). *See generally* Pressler, *Current N.J. Court Rules,* comment 1 on *R.* 3:28 (1997). In *Nwobu* we noted that PTI is

[A]n alternative procedure to the traditional process of prosecuting criminal defendants. It is a diversionary program through which certain offenders are able to avoid criminal prosecution by receiving early rehabilitative services expected to deter criminal behavior. PTI is intended to augment the criminal justice system when prosecution would be ineffective, counterproductive, or unnecessary.

[139 *N.J.* at 240–41, 652 *A.*2d 1209.]

PTI was first established by *Rule* 3:28 in October 1970 as authority for the vocational-service pretrial intervention program operated by the Newark Defendants Employment Project. *State v. Leonardis,* 71 *N.J.* 85, 363 *A.*2d 321 (1976) (*"Leonardis I "*). The Court promulgated guidelines to implement the Rule. In 1979, the Legislature enacted a state-wide pre-trial intervention program as part of the Code of Criminal Justice. *See N.J.S.A.* 2C:43–12 to – 22; *State v. Leonardis,* 73 *N.J.* 360, 375 *A.*2d 607 (1977) (*"Leonardis II "*). Thus, since 1979, PTI has been governed simultaneously by the Rule and a statute which "generally mirror[ ]" each other. *Nwobu, supra,* 139 *N.J.* at 245, 652 *A.*2d 1209.

Throughout the program's history, the courts have remained sensitive to the fact that diversion is a quintessentially prosecutorial function. *See, e.g., State v. Dalglish,* 86 *N.J.* 503, 513, 432 *A.*2d 74 (1981) ("Since the Legislature has established a PTI program with judicial review . . . the problem of judicial interference with legislative authority has been eliminated. Nevertheless, our concern about unwarranted interference with prosecutorial prerogative persists . . . ."); *State v. Kraft,* 265 *N.J.Super.* 106, 111, 625 *A.*2d 579 (App.Div.1993) ("[I]t is the fundamental responsibility of the prosecutor to decide whom to prosecute . . . ."). It is fairly understood that the prosecutor has great discretion in selecting whom to prosecute and whom to divert to an alternative program, such as PTI. *Leonardis II, supra,* 73 *N.J.* at 381, 375 *A.*2d 607.

The prosecutor's discretion is not unbridled, however. If a defendant can "clearly and convincingly establish that the prosecutor's refusal to sanction admission into the program was based on a patent and gross abuse of . . . discretion," *Leonardis II, supra,* 73 *N.J.* at 382, 375 *A.*2d 607, a reviewing court may overrule the prosecutor and order a defendant admitted to PTI. *See also Dalglish, supra,* 86 *N.J.* 503, 432 *A.*2d 74 (holding that the patent and gross abuse of discretion standard applies after the adoption of the state-wide program as part of the 1979 Code of Criminal Justice). A "patent and gross abuse of discretion" is more than

just an abuse of discretion as traditionally conceived; it is a prosecutorial decision that "has gone so wide of the mark sought to be accomplished by PTI that fundamental fairness and justice require judicial intervention." *State v. Ridgway*, 208 *N.J.Super.* 118, 130, 504 *A.*2d 1241 (Law Div.1985) (citation omitted). In *State v. Bender*, 80 *N.J.* 84, 402 *A.*2d 217 (1979), we elaborated on the patent and gross abuse of discretion standard:

> Ordinarily an abuse of discretion will be manifest if defendant can show that a prosecutorial veto (a) was not premised upon a consideration of all relevant factors, (b) was based upon a consideration of irrelevant or inappropriate factors, or (c) amounted to a clear error in judgment.... In order for such an abuse of discretion to rise to the level of 'patent and gross,' it must further be shown that the prosecutorial error complained of will clearly subvert the goals underlying Pretrial Intervention.
>
> [*Id.* at 43, 504 *A.*2d 1241 (citation omitted).]

A defendant may persuade a court to vacate a PTI rejection and remand to the prosecutor for reconsideration on a somewhat lesser showing. *Dalglish, supra*, 86 *N.J.* at 509–11, 432 *A.*2d 74. If the reviewing court finds that "the prosecutor's decision was arbitrary, irrational, or otherwise an abuse of discretion, but not a patent and gross abuse, and also determines that a remand will serve a useful purpose," *id.* at 509, 432 *A.*2d 74, it could send the case back to the prosecutor. A remand might serve a useful purpose, for example, where it has been clearly and convincingly shown by a defendant that the prosecutor failed to consider all relevant factors. If such an omission resulted in a decision that although not clearly subversive to the underlying goals of PTI, might not otherwise have been reached, a reviewing court could refer the case to the prosecutor for reconsideration. *See, e.g., State v. Burger*, 222 *N.J.Super.* 336, 536 *A.*2d 1295 (App.Div.1988) (remanding PTI rejection to prosecutor where prosecutor failed to consider defendant's amenability to rehabilitation even though such failure did not amount to a patent and gross abuse of discretion). Previously we have explained that the relatively low threshold for judicial intervention in these circumstances is acceptable because "[t]hese instances raise issues akin to questions of law, concerning which courts should exercise

independent judgment in fulfilling their responsibility to maintain the integrity and proper functioning of PTI as a whole." *Dalglish, supra,* 86 *N.J.* at 510, 432 *A.*2d 74. It is unlikely, on the other hand, that a remand would serve a useful purpose if the prosecutor's decision was based on appropriate factors but, clearly and convincingly, amounted to a plain error of judgment equivalent to a patent and gross abuse of discretion. In that situation it is usually appropriate for a court directly to order admission to PTI.

A prosecutor is required to provide a criminal defendant with a statement of reasons justifying his or her PTI decision, and the statement of reasons must demonstrate that the prosecutor has carefully considered the facts in light of the relevant law. *See State v. Sutton,* 80 *N.J.* 110, 117, 402 *A.*2d 230 (1979) ("The statement of reasons may not simply 'parrot' the language of relevant statutes, rules, and guidelines."). The statement of reasons serves four primary purposes: (a) it facilitates effective judicial review, (b) it assists in evaluating the success of the PTI program, (c) it affords the defendant an opportunity to prepare a response, and (d) it dispels suspicions of arbitrariness. *See Nwobu, supra,* 139 *N.J.* at 249, 652 *A.*2d 1209 (citations omitted). In addition, the requirement that the prosecutor put his or her thought process on paper tends to protect against the consideration of inappropriate factors and promotes reasoned decision-making.

We presume that a prosecutor considered all relevant factors, absent a demonstration by the defendant to the contrary. *See Bender, supra,* 80 *N.J.* at 94, 402 *A.*2d 217. Additionally, a reviewing court's scrutiny is generally limited to the justification contained in the statement of reasons; a criminal defendant cannot "compel the prosecutor to take the stand," *ibid.,* either literally or figuratively, in the process of challenging his or her PTI rejection decision.

The foregoing legal edifice was constructed with careful attention to the preservation of the traditional role of the prosecu-

tor. Thus, we once again reaffirm our expectation that a prosecutor's decision to reject a PTI applicant "will rarely be overturned." *Leonardis II, supra,* 73 *N.J.* at 380, 375 *A.*2d 607.

## III

In this case, the Appellate Division reversed the assistant prosecutor's PTI rejection and remanded the case for her reconsideration. The issue before this Court is whether there was sufficient evidence to support the necessary finding that the assistant prosecutor's decision was arbitrary, irrational or otherwise an abuse of discretion. *See Dalglish, supra,* 86 *N.J.* at 509, 432 *A.*2d 74 (ruling that ordinary abuse of discretion standard applicable for remand to prosecutor).

█ The Legislature has provided seventeen criteria, "among others," that prosecutors and program directors shall consider in formulating their PTI recommendation. *See N.J.S.A.* 2C:43–12(e) (nature of offense, facts of the case, motivation and age of defendant, desire of victim to forego prosecution, unavailability of services suitable for defendant in the criminal justice system, likelihood that supervisory treatment would affect change in defendant, needs and interests of victim and society, extent to which defendant's crime is part of a continuing pattern of anti-social behavior, defendant's prior record, whether defendant's crime was of a violent nature, whether prosecution would merely exacerbate the social problem that led the defendant to commit the crime, defendant's history of physical violence toward others, applicant's link to organized crime, whether value of diversion would be outweighed by need for public prosecution, involvement of others in the crime, whether a grant of defendant's PTI application will affect the state's ability to prosecute codefendants, and whether the harm done to society by diversion would outweigh the benefits to society). Notably, nowhere does the statute attempt to instruct the prosecutor on the relative weight to be assigned these several criteria. Although the Legislature has highlighted several factors for the prosecutor or program director to consider, it clearly

intended to leave the weighing process to the prosecutor or program director.

The guidelines are similarly structured, although not exactly parallel. *See* Pressler, *Current N.J. Court Rules, R.* 3:28 (1997). Guideline 3 refers to the statutory criteria and supplements them with additional ones derived from the pre-statutory guidelines. *See generally,* comment on Guideline 3. Thus, for example, Guideline 3(i) elaborates upon statutory criteria e(1) ("nature of the offense"). Guideline 3(i) counsels that a PTI application "should generally be rejected" if the defendant has been charged with (a) taking part in organized criminal activity, (b) taking part in a continuing criminal business or enterprise, (c) acting with deliberate violence or the threat of violence, or (d) committing any act which constitutes a breach of the public trust. Although the Guidelines do represent a somewhat greater attempt to channel prosecutorial discretion than the statute, in the end it remains the responsibility of the prosecutor to weigh the various factors and to reach a determination.

We are not to be understood as endorsing unbridled prosecutorial discretion simply because all relevant factors and no inappropriate factors are in the mix. On the contrary, it remains the obligation of the judiciary to check those instances where the prosecutor has so inappropriately weighted the various considerations so as to constitute a "clear error in judgment." *See Leonardis II, supra,* 73 *N.J.* at 376, 375 *A.2d* 607 ("Even if a diversion decision did not entail the exercise of a 'quasi-judicial power,' review in this instance would be consistent with the traditional role which courts have exercised in safeguarding individuals from abusive governmental action."). *See, e.g., State v. Mickens,* 236 *N.J.Super.* 272, 565 *A.2d* 720 (App.Div.1989) (ordering PTI admission for a single mother of three young children charged with welfare fraud where the woman would lose her job if convicted and the woman was willing to make full restitution); *see also State v. Hoffman,* 224 *N.J.Super.* 149, 539 *A.2d* 1254 (App. Div.1988) (ordering PTI for a constable who mistakenly executed

an unsigned writ of replevin and thereby committed criminal trespass and official misconduct).

In this case, however, the opinion of the Appellate Division, although it includes a perfunctory recitation of the 'patent and gross abuse of discretion' standard,[1] fails to provide any explanation of the basis for its decision. The appellate panel stated that

> The critical question, which was not answered in prior proceedings, is whether Wallace was suffering from an exclusively mental problem when he committed the criminal acts and, if so, whether that condition can be treated. If this is the case, neither the fact that he threatened violence nor the fact that the illness caused him to make threats on other occasions warrants that he be barred from P.T.I. altogether. Indeed, if he is curable, P.T.I. is very much in order especially for a person with Wallace's otherwise exemplary prior record, his abilities and his apparent good standing in the community.

What the Appellate Division seems to be saying is not that the prosecutor either failed to consider all relevant factors or that she considered inappropriate factors, but rather that she failed to assign appropriate weight to the defendant's mental condition at the time of the offense, and, in addition, that the facts concerning that mental condition should be further explored. Indeed, it was and remains the crux of the defendant's position that the prosecutor focused too narrowly on the nature of the offense and to the exclusion of the individual circumstances of the defendant, including the depression he was suffering at the time of the offense.

Here it is clear that the prosecutor considered all the relevant factors including defendant's mental condition at the time of June 5th incident. In support of his application for PTI, defendant argued that his criminal behavior was related to his depression. Defendant also provided the opinion of Dr. Greenbarg, which was that defendant's depression was treatable with medication and psychotherapy.

---

[1] As noted earlier, the patent and gross abuse of discretion is inapplicable in light of the result reached by the Appellate Division. In order to remand the case to the prosecutor as it did, the court need only find that the prosecutor's decision was arbitrary, irrational or otherwise an abuse of discretion.

In rejecting defendant's application, the assistant prosecutor considered the submitted information. Her rejection letter began:

After a review of the State's package and all materials provided, including Dr. Greenbarg's letter and your comments submitted in support of your client's application, be advised that your client's application for admission into the P.T.I. Program is denied.

The prosecutor continued:

Despite the fact that your client has no previous criminal record, he is not an appropriate candidate for the Program. He has been under psychiatric care and appears to be unstable and violent.

As support for her decision, the prosecutor primarily relied on a prosecutorial guideline that discourages PTI for those defendants charged with either first or second degree offenses. *See R.* 3:28, Guideline 3(i). After adding that PTI is also not recommended for individuals charged with acts committed with violence or the threat of violence, *see R.* 3:28, Guideline 3(i)(3), the prosecutor stated that "[y]our client created a potentially deadly situation. The violent nature of this crime cannot be disputed. He went there to kill her."

Thus, defendant's contention that the prosecutor did not consider, "in the true sense of the word," his mental condition and his amenability to treatment is not sustainable. The appellate court improperly agreed with defendant, despite the clear evidence that the prosecutor both had possession of and presumably considered the information supplied to her by Dr. Greenbarg and defendant's counsel. *See Nwobu, supra,* 139 *N.J.* at 249, 652 *A.*2d 1209 (noting presumption that the prosecutor has considered all relevant factors).

Defendant also argues that a reviewing court should accord significant weight to the post-rejection imposition of a non-custodial term of probation based in part on rehabilitative concerns, particularly when, as in this case, the negotiated plea reduces the second-degree offense to a third-degree offense for sentencing purposes. We think, however, that a subsequently negotiated non-custodial sentence does not retrospectively impugn the soundness of a previous prosecutorial decision that criminal prosecution

rather than pretrial diversion is the appropriate disposition of the charges against the defendant. To permit that line of attack would unfairly undermine an otherwise well-founded decision to deny PTI. It would also seriously inhibit the discretion of the prosecutor with respect to the PTI decision and, after the denial of PTI, would serve to discourage efforts by the State to enter into a negotiated plea agreement that seeks to accommodate a defendant's condition, need for treatment, amenability to supervision, and likelihood for rehabilitation. To the extent *State v. Fitzsimmons*, 291 *N.J.Super.* 375, 677 *A.*2d 767 (App.Div.), *certif. denied*, 146 *N.J.* 568, 683 *A.*2d 1163 (1996), endorses a different standard, we disapprove that decision.

The reality of this case is that the prosecutor weighed the relevant and material factors and reached a conclusion that defendant was not an appropriate candidate for PTI. Defendant and the Appellate Division performed a similar weighing process and reached a contrary conclusion. The problem is that the Appellate Division failed to view the prosecutor's decision through the filter of the highly deferential standard of review. *See Kraft, supra,* 265 *N.J.Super.* at 111, 625 *A.*2d 579 ("In fact, the level of deference which is required is so high that it has been categorized as 'enhanced deference' or 'extra deference.' " (citations omitted)). The court essentially evaluated the case as if it stood in the shoes of the prosecutor, whereas it should have been focused on whether it amounted to an 'arbitrary, irrational or otherwise an abuse of discretion' for the prosecutor to have assigned as much weight to the gravity of the offense as she apparently did in this case.

Regardless of how we would have decided this case if required to do so *de novo*, we do not think that the assistant prosecutor's evaluation of the situation and balance of the factors amounted to a clear error of judgment. *See Nwobu, supra,* 139 *N.J.* at 254, 652 *A.*2d 1209 ("The question is not whether we agree or disagree with the prosecutor's decision, but whether the prosecutor's decision could not have been reasonably made upon weighing the relevant factors."). A prosecutor has the prerogative to view seriously

matters of domestic violence, *see Kraft, supra,* 265 *N.J.Super.* at 117, 625 *A.*2d 579 ("Certainly, a reviewing court is not permitted to 'discount the prosecutor's responsiveness to the prevailing level of local public anxiety over certain forms of misconduct and its proper effect upon him in choosing between the goals of public deterrence and the least burdensome form of rehabilitation for the offender.'" (citing *State v. Litton,* 155 *N.J.Super.* 207, 382 *A.*2d 664 (App.Div.1977))), and apparently the prosecutor has chosen to do so in this case.

## IV

The judgment of the Appellate Division is reversed.

*For reversal*—Justices HANDLER, POLLOCK, O'HERN, GARIBALDI, STEIN and COLEMAN—6.

*Opposed*—None.