765 A.2d 278 (2001)
336 N.J. Super. 506
James FLAGG, Plaintiff-Respondent,
v.
ESSEX COUNTY PROSECUTOR, Defendant-Appellant.
Superior Court of New Jersey, Appellate Division.
Submitted January 8, 2001.
Decided January 23, 2001.
*279 Donald C. Campolo, Assistant Attorney General, Acting Essex County Prosecutor,[1] attorney for appellant (Barbara A. Rosenkrans, Special Deputy Attorney General/ Acting Assistant Prosecutor, of counsel and on the brief).
Beckerman & Beckerman, South Orange, for respondent (David M. Beckerman, on the brief).
Before Judges PETRELLA, NEWMAN and WELLS.
The opinion of the court was delivered by NEWMAN, J.A.D.
The Essex County Prosecutor (Prosecutor) appeals from an order exempting plaintiff James Flagg from the forfeiture of his public employment as a sanitation worker for the City of Newark for violating N.J.S.A. 13:1E-9.3(a) and (b) by illegally dumping debris, disorderly persons offenses for which Flagg was convicted. The Prosecutor declined to waive the application of N.J.S.A. 2C:51-2, which requires the forfeiture of public employment where the offense involves or touches on the employee's employment. We are satisfied that under the patent and gross abuse of discretion standard, which is the governing standard of review, that the Prosecutor's decision should not have been overturned and we now reverse.
The facts are straight forward and are not in dispute. James Flagg (Flagg) was a twenty-nine year employee of the Department of Sanitation of the City of Newark, who worked as a dump truck driver. On September 5, 1996, Flagg began his nightly rounds, which usually lasted from 5:00 p.m. to midnight. On that evening, as had been customary for the last twelve years, Flagg worked with a crew of three, consisting of an unnamed laborer, Michael Beatty, another dump truck driver, and Lawrence Chatmon (Chatmon), a payloader, who was responsible for operating the machine that lifts large volumes of material and deposits it into a truck or other source. The Department of Sanitation assigns each crew a supervisor. On this evening, Norman Dorch (Dorch) replaced Levi Jackson, the crew's regular supervisor.
*280 Flagg's dump truck "broke down" as he was driving to his regular route. He radioed his supervisor, Dorch, to inform him of the break down. Dorch responded and Flagg accompanied him to the Department of Sanitation garage. After obtaining another truck, Dorch told Flagg to follow him until they arrived at 162 Miller Street.
Chatmon, the driver of the payloader, was already present at the location. Dorch instructed Flagg to back up the truck so that Chatmon could load it with debris from the curb and sidewalk. When the truck was loaded, Dorch instructed Flagg to follow him to King Street, about two blocks away. Dorch directed him to dump the load on the street next to what appeared to be another load, which had been dumped there previously. Dorch said that he would assume responsibility for the dumping. Flagg did as he was told. Flagg then returned the dump truck to the garage, retrieved a sanitation truck and resumed his usual duties on his regular route.
Soon afterwards, Newark police officers confronted Flagg and brought him as well as Chatmon and Dorch to where the illegal dumping had taken place on King Street. The police then transported Flagg, Dorch, and Chatmon to the police station, where they were questioned and asked to sign a statement. Flagg's statement admits to dumping trash on King Street in compliance with his supervisor's orders.
Flagg was convicted of collecting, transporting, and disposing of garbage on a public street in violation of N.J.S.A. 13:1E-9.3(a) and (b) in the Maplewood Municipal Court. Flagg appealed to the Law Division of the Superior Court, which affirmed the conviction. This court affirmed plaintiff's conviction. State v. James Flagg, Docket No. A-6332-98T5.
On August 16, 1999, Flagg filed a complaint in lieu of prerogative writs requiring the Prosecutor to either waive the job forfeiture mandate of N.J.S.A. 2C:51-2 or explain his reasons for not waiving the job forfeiture.
The Law Division judge held a hearing on Flagg's complaint. Chief Assistant Prosecutor Siobhan A. Teare (Teare) testified that the Prosecutor decided not to waive the mandatory job forfeiture provision of N.J.S.A. 2C:51-2. Teare said that the Prosecutor found the following facts relevant to his decision: (1) Flagg was convicted of a strict liability offense; and, therefore, the Legislature's intent would be undermined by exempting Flagg from job forfeiture; and (2) the twenty-nine year veteran of the sanitation department must have realized the illegality of his supervisor's request to dispose of garbage in the middle of the street, especially, in light of the fact Flagg knew something was wrong when his boss told him he would take the responsibility if anything happened as a result of the dumping. Teare asserted that, at that time, it was not the policy of the Prosecutor to waive a forfeiture, although only two cases had been presented for consideration previously.
Noting that Flagg had an unblemished record, had performed his job with the City of Newark in excess of approximately thirty years, and that the statute under which Flagg was convicted did not require intent, the judge held that the Prosecutor's decision not to waive the employment forfeiture mandate of N.J.S.A. 2C:51-2 constituted "an extraordinary abuse of discretion."
N.J.S.A. 2C:51-2 requires a public employee to forfeit employment when the employee is convicted of an offense, which involves dishonesty or a crime of third-degree or higher, or which involves or touches his or her employment. "Viewing N.J.S.A. 2C:51-2 as a whole, it is clear that the Legislature intended a forfeiture of public employment upon conviction for a qualifying offense to be mandatory, regardless of whether forfeiture is ordered at the time of conviction or at some later date." State v. Ercolano, 335 N.J.Super. 236, 762 A.2d 259 (App.Div.2000). However, *281 N.J.S.A. 2C:51-2e provides that "[a]ny forfeiture ... based upon a conviction of a disorderly persons or petty disorderly persons offense may be waived by the court upon application of the county prosecutor or the Attorney General." Ibid.
This court in State v. Lazarchick, 314 N.J.Super. 500, 715 A.2d 365 (App.Div. 1998), established a patent and gross abuse of discretion standard as the standard the court should employ when reviewing a decision by the Attorney General or a prosecutor to waive forfeiture of public employment for a conviction of a disorderly or petty disorderly persons offense. In so concluding, we traced the legislative history regarding the enactment of N.J.S.A. 2C:51-2e, emphasizing that
[b]y way of addressing the qualifications for holding public office or employment, the Legislature has ordained that forfeiture of office necessarily follows from `convict[ion] of an offense involving or touching such office, position, or employment,' N.J.S.A. 2C:51-2a(2). Except in an instance in which the conviction is for the least grave penal wrongdoings, disorderly persons or petty disorderly persons offenses, N.J.S.A. 2C:51-2e, the question of waiving that requirement does not even arise.
[Lazarchick, supra, 314 N.J.Super. at 532, 715 A.2d 365.]
We explained that the plain language dictated that the court may not initiate consideration of waiver, but rather that is a function reserved to the Attorney General and the county prosecutors. Ibid. The court should not become involved in determining whether or not the waiver is appropriate in the circumstances until after it has been determined that a waiver ought to be sought. Id. at 532-33, 715 A.2d 365.
This court noted that "N.J.S.A. 2C:51-2e was inserted in the statute to `ameliorate [its] harshness' in practical application." Id. at 529, 715 A.2d 365 citing Senate Judiciary Committee, Statement to Senate Bill No. 4479 (December 17, 1987). While it was proposed originally that municipal prosecutors be given the power to apply for waiver, this was vetoed by Governor Kean, who stressed that "only the Attorney General and the twenty-one county prosecutorsthe highest ranking law enforcement officers at the State and County levels, respectively," ought to possess the power to request waiver of the mandatory forfeiture of employment. Moore v. Youth Correctional Institute at Annandale, 119 N.J. 256, 267, 574 A.2d 983 (1990) quoting Governor Kean, Letter to the General Assembly (January 11, 1988). Governor Kean attempted to clarify the purpose of the waiver provision:
[R]equiring mandatory forfeiture of and permanent disqualification from public office may, under some circumstances, be too harsh a sanction for a minor infraction of our laws. For instance, law enforcement officers are often placed in confrontational situations which may result in a complaint being filed against them for disorderly conduct, including offensive language, shoving, offensive touching, etc. While these disorderly persons offenses should be taken very seriously and dealt with sternly, they are not so serious in every case as to warrant the loss of position or the permanent, lifetime disqualification from holding such office.
[Id. at 268, 574 A.2d 983.]
In adopting the patent and gross abuse of discretion standard in Lazarchick, we looked to the standard set forth in pre-trial intervention, which bore some similarities to a determination to have forfeiture of employment, and which was also reposed in the county prosecutors and the Attorney General. Lazarchick, supra, 314 N.J.Super. at 533, 715 A.2d 365 (adopting the pre-trial intervention standard of discretion set forth in State v. Wallace, 146 N.J. 576, 582, 684 A.2d 1355 (1996)). "A `patent and gross abuse of discretion' is more than just an abuse of discretion as traditionally conceived; it is a prosecutorial decision that `has gone so wide of the *282 mark sought to be accomplished ... that fundamental fairness and justice require judicial intervention.'" Wallace, supra, 146 N.J. at 582-83, 684 A.2d 1355 citing State v. Ridgway, 208 N.J.Super. 118, 130, 504 A.2d 1241 (Law Div.1985). Under this standard, there is enhanced deference to prosecutorial decision-making. Wallace, supra, 146 N.J. at 582, 684 A.2d 1355.
Here, the judge did not evaluate the Prosecutor's decision not to waive forfeiture under a patent and gross abuse of discretion standard, but rather reviewed the Prosecutor's decision by reevaluating the Prosecutor's decision through application of the PTI factors. The judge erred in doing so, and, in effect, mistakenly substituted his judgment for that of the Prosecutor. Indeed, the judge should have deferred to the Prosecutor's decision not to waive forfeiture, applying the limited scope of review inherent in the patent and gross abuse of discretion standard. While we might view Flagg's situation more sympathetically than did the Prosecutor, we cannot state that the reasons not to waive the forfeiture provision were so wide of the mark as to require our intervention. A person whose primary work responsibility involved the proper and lawful disposal of garbage should not engage in illegal dumping. Flagg should not be permitted to circumvent the legislative goal that anyone, who illegally dumps garbage, suffers the full consequences of his wrongdoing, regardless of intent.
We believe that the situation presented, here, could have been more effectively addressed had the Prosecutor initially provided a statement of reasons why he declined to waive the forfeiture provision for this disorderly persons' conviction instead of waiting for a hearing in which testimony had to be elicited from a subordinate to ascertain those reasons. As the Supreme Court explained in State v. Wallace, supra, 146 N.J. at 584, 684 A.2d 1355.
The statement of reasons serves four primary purposes: (a) it facilitates effective judicial review, (b) it assists in evaluating the success of the PTI program, (c) it affords the defendant an opportunity to prepare a response, and (d) it dispels suspicions of arbitrariness. In addition, the requirement that the prosecutor put his or her thought process on paper tends to protect against the consideration of inappropriate factors and promotes reasoned decision-making.
All of the purposes advanced for requiring a written statement of reasons in the PTI context apply with equal force where a public employee's job is at stake. See State v. Lagares, 127 N.J. 20, 32, 601 A.2d 698 (1992)(stating that requiring prosecutors to state on the record the reasons for seeking an extended sentence would permit effective review of prosecutorial sentencing decisions while insuring that prosecutors follow the guidelines in each case). As a matter of fundamental fairness an employee of twenty-nine years of service is entitled to no less. See Monks v. New Jersey State Parole Board, 58 N.J. 238, 250, 277 A.2d 193 (1971) (requiring as a matter of fairness that an inmate, who is denied parole, is entitled to a statement of reasons for such denial).
We are also cognizant that no factors have been formulated to assist the Attorney General or county prosecutors in determining whether to waive forfeiture of public employment under N.J.S.A. 2C:51-2e. All of the factors that law-enforcement agencies might consider significant in determining whether to waive forfeiture of public employment, are beyond the scope of the limited factual circumstances presented to us. A more comprehensive undertaking is necessary. The Attorney General, in consultation with the twenty-one county prosecutors, may, therefore, deem it appropriate to adopt guidelines for use throughout the State to promote uniformity. The adoption of such guidelines, when properly utilized, should enable prosecutors to avoid a patent and gross abuse exercise of discretion where the consequences to a public employee are irreparable. See State v. Lagares, supra, 127 N.J. *283 at 32, 601 A.2d 698 (requiring the Attorney General and prosecutors to adopt guidelines to assist prosecutorial decision-making with respect to applications for enhanced sentences under N.J.S.A. 2C:43-6f).
The order exempting plaintiff from the applicability of the forfeiture provisions of N.J.S.A. 2C:51-2 is reversed.
NOTES
[1] Although Donald C. Campolo is Acting Essex County Prosecutor, we refer to him simply as the Essex County Prosecutor.