**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-1962-18T4

LEROY MOORE,

     Appellant,

v.

NEW JERSEY DEPARTMENT
OF CORRECTIONS,

     Respondent.

_____

Submitted February 3, 2020 – Decided  March 2, 2020

Before Judges Ostrer and Susswein.

On appeal from the New Jersey Department of Corrections.

Leroy Moore, appellant pro se.

Gurbir S. Grewal, Attorney General, attorney for respondent (Jane C. Schuster, Assistant Attorney General, of counsel; Christopher C. Josephson, Deputy Attorney General, on the brief).

PER CURIAM

Inmate Leroy Moore appeals from the decision of the Department of Corrections Office of Community Programs (OCP) denying his release to a Residential Community Release Program (RCRP), colloquially known as a half-way house. He contends the decision was arbitrary, capricious, and unreasonable, because the decision-makers relied, without adequate explanation, on his criminal history. As the Department failed to clearly state the reasons for its decision, or to show it weighed the factors its own regulations prescribe, we remand for reconsideration.

Moore has been incarcerated continuously since June 2014. He was convicted of multiple drug offenses that he committed in 2009, and bail jumping committed in 2010. His aggregate term of seventeen years, of which eight had to be served before parole eligibility, includes a nine-year-term for his most serious drug offense, and an eight-year-term for bail jumping. With the benefit of jail credits, he became eligible for parole in late 2019, but remains in custody. Moore has an extensive prior record of juvenile adjudications and adult convictions. The latter include convictions for escape, drugs, theft, resisting arrest and obstruction of justice. He is now forty-two years old.

The Institutional Classification Committee (ICC) approved Moore for full minimum status in February 2018. That satisfied a prerequisite for assignment

to an RCRP.  See N.J.A.C. 10A:9-4.3(f) (stating that "[f]ull minimum custody status" is a prerequisite for "community custody status," which is required for assignment to an RCRP); N.J.A.C. 10A:20-4.4(a)(1) (stating that candidates for an RCRP generally must be classified as full minimum).  The ICC thereafter approved Moore's application for an RCRP.  The administrator of the prison where he was housed approved it as well.  However, in September 2018, the OCP denied Moore's application – as it had done twice previously in 2018.  The OCP explained, "A review of your program participation, classification file, and the nature and details of [your] offense have resulted in this denial."  Below that statement appeared the words "CRIMINAL HISTORY."

Moore appeals from that last denial.  Moore argues that reference to his criminal history defies meaningful review because every inmate has one.  He contends his criminal history, while extensive, does not reflect a propensity for violence, except a juvenile adjudication when he was thirteen years old.  The Department defends its decision, noting that Moore had no liberty interest in community placement, and that his adult record of eight Superior Court convictions, and fourteen municipal court convictions, justified denial.

Applying our well-settled standard of review, we will disturb the Department's decision only if it is "arbitrary, capricious or unreasonable," or is

A-1962-18T4

unsupported "by substantial credible evidence in the record as a whole." Henry v. Rahway State Prison, 81 N.J. 571, 579-80 (1980).

We recognize the Commissioner has "complete discretion" to determine an inmate's placement and custody status. Smith v. N.J. Dep't of Corr., 346 N.J. Super. 24, 29 (App. Div. 2001) (citing N.J.S.A. 30:4-91.2). Nonetheless, we will find an abuse of discretion "when a decision is 'made without a rational explanation, inexplicably departed from established policies, or rested on an impermissible basis.'" Flagg v. Essex Cnty. Prosecutor, 171 N.J. 561, 571 (2002) (quoting Achacoso-Sanchez v. Immigration & Naturalization Serv., 779 F.2d 1260, 1265 (7th Cir. 1985)). "[I]t is a fundamental of fair play that an administrative judgment express a reasoned conclusion . . . [which] requires evidence to support it and findings of appropriate definiteness to express it." N.J. Bell Tel. Co. v. Commc'ns Workers of Am., 5 N.J. 354, 375 (1950) (internal citation omitted).

Meaningful judicial review depends on the agency providing a reasonable record, and a statement of its findings, so the reviewing court can understand how the agency came to its conclusion. "We cannot accept without question an agency's conclusory statements, even when they represent an exercise in agency expertise. The agency is obliged . . . to tell us why" it reached a result. Balagun

4

v. N.J. Dep't of Corr., 361 N.J. Super. 199, 202-03 (App. Div. 2003) (internal quotation marks and further citations omitted); see also Blyther v. N.J. Dep't of Corr., 322 N.J. Super. 56, 63 (App. Div. 1999) (stating that "[n]o matter how great a deference we must accord the administrative determination, we have no capacity to review the issues at all 'unless there is some kind of reasonable factual record developed by the administrative agency and the agency has stated its reasons' with particularity") (quoting In re Issuance of a Permit, 120 N.J. 164, 173 (1990)).

The Commissioner has circumscribed his discretion over inmate placement by adopting regulations that delegate placement decisions to various agency officials, subject to prescribed factors. "[A]n administrative agency ordinarily must enforce and adhere to, and may not disregard, the regulations it has promulgated." Cnty. of Hudson v. N.J. Dep't of Corr., 152 N.J. 60, 70 (1997).

With respect to assignment to the RCRP, the agency has adopted an extensive regulatory scheme. N.J.A.C. 10A:20-4.10(a) vests an initial decision in the ICC, once the Institutional Community Release Program Coordinator determines that the inmate has met eligibility criteria, N.J.A.C. 10A:20-4.8(c), (e). Eligibility is based on nine identified factors, including achievement of full minimum status:

(a) Candidates for participation in residential community programs shall:

1. Be classified full minimum by the Institutional Classification Committee (I.C.C.) except as set forth in N.J.A.C. 10A:9-3 and 4;

2. Not demonstrate an undue risk to public safety;

3. Have a psychological evaluation which supports placement in a residential community program and shall address the inmate's readiness and ability to adequately adapt to the pressures and responsibilities of living outside the correctional facility. The psychological evaluation shall not be more than 12 months old;

4. Have received medical and dental certification, in accordance with N.J.A.C. 10A:20-4.9, indicating medical and dental clearance and that shall not be more than twelve months old;

5. Have made a satisfactory overall correctional facility adjustment and be seen as not likely to pose a threat to the safety of the community;

6. Have completed and signed Form 686--I Community Program Application for those inmates who are interested in participating;

7. Have had Form 686--I approved by the Institutional Classification Committee (ICC);

8. Have been approved by the Residential Community Program Notification Committee when notification is required pursuant to N.J.S.A. 30:4-91.8; and

A-1962-18T4

9. Have been found to be an appropriate candidate for participation in a residential community program by the Assessment and Treatment Center.

[N.J.A.C. 10A:20-4.4.]

In addition, the regulations establish time frames for eligibility, in view of established or anticipated parole dates or eligibility or a "max-out" date, so long as the inmate does "not demonstrate an undue risk to public safety," and has not committed arson or certain sex offenses. N.J.A.C. 10A:20-4.5.

The ICC shall also consider a medical, dental and psychological review of the applicant. N.J.A.C. 10A:20-4.9. The ICC then determines whether to approve the inmate's application, based on the "eligibility criteria" in N.J.A.C. 10A:20-4.4, which we have already quoted; any record of parole violations or prior failures in an RCRP; and the "decisionmaking criteria" in N.J.A.C. 10A:9-3.3. N.J.A.C. 10A:20-4.10. The twenty-two prescribed criteria in N.J.A.C. 10A:9-3.3 apply to any decision on custody status:

(a) Decisions on transfers and assignments to housing; work, educational, vocational, or treatment programs; custody status; and residential community programs shall be made after consideration of the following factors:

1. The objective classification scoring results (excluding inmates committed to A.D.T.C.);

2. Needs and interests expressed by inmate;

3.  Age;

4.  Family status;

5.  Social contacts with family and friends;

6.  Correctional facility adjustment;

7.  Residential community program adjustment;

8.  Educational history and needs;

9.  Vocational history and needs;

10.  Military history;

11.  Nature and circumstance of present offense;

12.  Prior offense record;

13.  Records from previous confinement;

14.  Detainers on file or pending;

15.  Substance dependency and/or involvement;

16.  Sexual adjustment;

17.  History of escape, attempted escape or propensity for escape;

18.  Current psychological and/or psychiatric reports;

19.  Medical history and recommendations;

20.  Arson history;

A-1962-18T4

21. A conviction for any offense that resulted in a life sentence when one or more of the following aggravating circumstances are in the inmate's present or prior offense history (see N.J.S.A. 2C:44-1a.)

> i. Grave or serious harm inflicted on a victim, including whether or not the offender knew or reasonably should have known that the victim was particularly vulnerable or incapable of resistance due to advanced age, ill health, or extreme youth, or for any other reason, the victim was substantially incapable of exercising normal physical or mental power of resistance;

> ii. A substantial likelihood that the offender was involved in organized criminal activity;

> iii. The offender committed the present offense pursuant to an agreement that he or she either pay or be paid for the commission of the offense and the financial incentive was beyond that inherent in the offense itself;

> iv. The offender committed the offense against a police or other law enforcement officer, correctional employee or fireman, acting in the performance of his or her duties while in uniform or exhibiting evidence of his or her authority and/or the offender committed the offense because of the status of the victim as a public servant;

22. Needs of the correctional facility; and/or

A-1962-18T4

23. Any other factor pertinent to the inmate's case.

[N.J.A.C. 10A:9-3.3.]

Furthermore, in considering a custody status change, the ICC must consider "all relevant factors," which "may include, but are not limited to" the following:

1. Field account of the present offense;

2. Prior criminal record;

3. Previous incarcerations;

4. Correctional facility adjustment;

5. Residential community program adjustment;

6. The objective classification score;

7. Reports from professional and custody staff;

8. A conviction for a present or prior offense that resulted in a life sentence; and

9. Any reason which, in the opinion of the Administrator and the I.C.C., relates to the best interests of the inmate or the safe, orderly operation of the correctional facility or the safety of the community or public at large.

[N.J.A.C. 10A:9-4.5(a).]

A prison administrator may overrule the ICC's approval "when the Administrator has information which was not available to the I.C.C. when the . . . application was approved." N.J.A.C. 10A:20-4.10(c). However, an

A-1962-18T4

administrator may not overrule the ICC's disapproval of an application. N.J.A.C. 10A:20-4.10(b).

The regulations do not expressly empower the OCP to override the ICC decision to place an inmate in an RCRP. However, the Commissioner or his or her designee retains the power to decide that an inmate is not suited for community placement. The regulation states, "Candidates are eligible for participation in a residential community program when the candidate: 1. Is otherwise eligible . . . and is determined by the Commissioner or designee to be appropriate for participation in a residential community program." N.J.A.C. 10A:20-4.5(b)(1).

We take judicial notice that the Commissioner adopted a rule exemption in March 2019. See N.J.R.E. 202(b); N.J.R.E. 201(a). The rule exemption states that the "additional layer of review" the OCP provides is designed "to ensure that the appropriate inmate(s) entering the residential programs do not pose an undue risk to the inmate and/or public safety" and to ensure that participation in community programs "is reviewed in a consistent manner across all inmates, and all correctional facilities."

Neither N.J.A.C. 10A:20-4.5(b)(1) nor the rule exemption expressly require the OCP as designee, to apply the numerous factors governing general

and specific eligibility for the RCRP. However, we do not interpret the regulation to grant the OCP unbridled discretion to grant or deny RCRP placement. In would make little sense to impose the extensive set of criteria governing the ICC decision, if the ultimate decision were untethered to them. Rather, we assume that the OCP will consider those same factors.

We draw an analogy to the Court's method of reviewing a prosecutor's discretionary decision to deny admission to a pretrial intervention program. The Court stated, "We presume that a prosecutor considered all relevant factors, absent a demonstration by the defendant to the contrary." State v. Wallace, 146 N.J. 576, 584 (1996). However, that presumption is predicated on an adequate statement of the factors that the prosecutor did consider. "[A] reviewing court's scrutiny is generally limited to the justification contained in the statement of reasons." Ibid.

Consistent with the principles set forth at the outset of our legal discussion, the OCP was obliged to provide a reasoned explanation for its decision. We recognize that an inmate's prior criminal record is a relevant factor under the regulations. See N.J.A.C. 10A:9-3.3(a)(12) ("[p]rior offense record"); N.J.A.C. 10A:9-4.5(a)(2) ("[p]rior criminal record"). However, it is one of many. Even assuming the OCP considered "all relevant factors," the OCP did

not provide an adequate statement of its reasons. It is not enough to state it denied Moore placement in an RCRP because of his "criminal history" when everyone in State custody has one.[1] To enable judicial review, and to guard against an abuse of discretion, the OCP was obliged to describe the nature of Moore's criminal history, explain why it evidently tipped the balance against his participation in an RCRP, and discuss the other relevant factors it considered.

As the OCP did not adequately explain its decision, we are unable to ascertain whether it was a reasoned exercise of discretion, or an arbitrary and capricious one. We therefore remand for reconsideration and a decision that reflects compliance with the agency's regulatory framework.

Remanded for reconsideration. We do not retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

---

[1] The evident purpose of an RCRP is to promote an inmate's successful adjustment to life back in the community. It does so by combining gradual reentry with the supports and supervision of the community program. We note that whether or not Moore is assigned an RCRP, he will eventually complete his sentence and be released back into the community. The agency must ultimately determine if it will serve the public's interest, as well as the inmate's, to precede that release by assignment to an RCRP, and if so, when.

A-1962-18T4