**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-1787-18

STATE OF NEW JERSEY,

    Plaintiff-Respondent,

v.

MARION PEARSON,

    Defendant-Appellant.

_____

Argued September 7, 2021 – Decided October 4, 2021

Before Judges Alvarez and Gooden Brown.

On appeal from the Superior Court of New Jersey, Law Division, Bergen County, Indictment No. 15-11-1469.

Susan L. Romeo, Assistant Deputy Public Defender, argued the cause for appellant (Joseph E. Krakora, Public Defender, attorney; Susan L. Romeo, of counsel and on the brief).

Edward F. Ray, Assistant Prosecutor, argued the cause for respondent (Mark Musella, Bergen County Prosecutor, attorney; Edward F. Ray, of counsel and on the brief).

PER CURIAM

A jury convicted defendant Marion Pearson of two counts of second-degree unlawful possession of a handgun, N.J.S.A. 2C:39-5(b), and one count of fourth-degree possession of hollow-nosed bullets, N.J.S.A. 2C:39-3(f). The trial judge sentenced defendant on September 28, 2018, to concurrent terms of five years, subject to forty-two months of parole ineligibility required by the Graves Act, N.J.S.A. 2C:43-6(c). We remand the matter for the Prosecutor's Office to provide a written statement of reasons on defendant's application for pretrial intervention (PTI), considering the application in light of N.J. Att'y Gen., Clarification of "Graves Act" 2008 Directive with Respect to Offenses Committed by Out-of-State Visitors from States Where Their Gun-Possession Conduct Would Have Been Lawful (Sept. 24, 2014) (2014 Directive). Otherwise, the convictions and sentence are affirmed.

Defendant came to the authorities' attention when a convenience store customer saw a holstered gun strapped to defendant's side. Police arrested defendant at the scene, seizing a Glock from his side holster, a Taurus revolver from his right jacket pocket, and hollow-nosed bullets. Defendant, a Georgia resident, was forty-four years old, had one prior arrest in 2004 for brandishing a firearm, and worked as a security guard. When arrested, he showed the officers his identification and his valid "Georgia weapons carry license."

On July 25, 2017, the Criminal Division Manager Pretrial Intervention Director rejected defendant's application in the absence of the prosecutor's join-in because of the second-degree nature of the charges. The Prosecutor's Office never responded to the application or the rejection letter.

At a status conference months later, on April 30, 2018, the prosecution indicated it would not join in a waiver of Graves Act parole ineligibility and would not recommend any sentence less than five years with forty-two months of parole ineligibility. Before the trial began in August 2018, however, defendant rejected the State's reduced last offer of probation subject to 364 days in county jail. No one commented on defendant's PTI application.

Prior to trial, the judge granted the State's motion to bar evidence that defendant possessed a valid permit to carry in Georgia. He concluded that the permit was "irrelevant for the determination of the elements of the offense . . . . It could only serve to act as a potential argument for juror nullification."

On appeal, defendant raises the following points:

POINT I

THIS MATTER MUST BE REMANDED FOR RECONSIDERATION OF DEFENDANT'S PTI APPLICATION IN ACCORDANCE WITH THE ATTORNEY GENERAL'S 2014 DIRECTIVE PERTAINING TO OTHERWISE LAW ABIDING OUT-OF-STATE VISITORS WHO POSSESS VALID

FIREARMS PERMITS FROM THEIR STATE OF RESIDENCE.

POINT II

DEFENDANT IS ENTITLED TO A NEW TRIAL, BECAUSE THE PRECLUSION OF EVIDENCE OF HIS GEORGIA CARRY LICENSE VIOLATED HIS RIGHT TO PRESENT A COMPLETE DEFENSE AGAINST TESTIMONY FROM THE STATE'S KEY WITNESS THAT CHARACTERIZED HIM AS A DANGEROUS PERSON.

POINT III

THIS MATTER MUST BE REMANDED FOR RESENTENCING BECAUSE THE STATE OFFERED NO EVIDENCE, OR EVEN AN EXPLANATION, TO REBUT THE PRESUMPTION THAT DEFENDANT WAS ENTITLED TO A NON-CUSTODIAL PROBATIONARY SENTENCE AS SPECIFIED IN THE ATTORNEY GENERAL'S 2014 DIRECTIVE.

I.

Defendant contends the matter should be remanded for the prosecutor to consider defendant's PTI application in light of the 2014 Directive. The Directive changed the process for out-of-state residents found in possession of a handgun—enumerating factors for consideration in determining whether admission to PTI or a probation/364-day county jail sentence offer should be made available.

4

"[D]iversion is a quintessentially prosecutorial function" subject to reversal only where "a defendant can 'clearly and convincingly establish that the prosecutor's refusal to sanction admission into the program was based on a patent and gross abuse of . . . discretion' . . . ." State v. Wallace, 146 N.J. 576, 582 (1996) (alteration in original). "A 'patent and gross abuse of discretion' is more than just an abuse of discretion as traditionally conceived; it is a prosecutorial decision that 'has gone so wide of the mark sought to be accomplished by PTI that fundamental fairness and justice require judicial intervention.'" Id. at 582-83.

Here, without mention of the Directive, the Division Manager rejected defendant's application out-of-hand. For obvious reasons, we cannot review the State's position at the time on whether defendant met the three prongs of the 2014 Directive, which may have made his admission into PTI or an initial offer of a sentence of non-custodial probation possible.[1] Nor do we know the reasons counsel, the court, and the Prosecutor's Office omitted any mention of the 2014

---

[1] The Court Rules as presently constituted, specifically Rule 3:28-3(b)(2), requiring a prosecutor to submit reasons for rejection within fourteen days of receipt, and Rule 3:28-6(a), requiring an appeal within ten days, were not in effect when defendant applied.

Directive, much less the reason it was considered inapplicable to defendant's situation.

Defendant's failure to pursue the matter muddies the issue. Clearly, defendant should have appealed the rejection. But the Prosecutor's Office was, as an initial matter, obligated to submit a written response regardless of whether defendant appealed the rejection. At the time, admission into PTI was "uniformly reliant upon the recommendation of the criminal division manager, the consent of the prosecutor, and the approval of the judge designated to act on all matters pertaining to [PTI] in the vicinage." State v. K.S., 220 N.J. 190, 197 (2015). The failure to respond, and defendant's failure to appeal, constituted a breakdown in the application process of unusual significance because of the context within which the application should have been assessed—the Directive.

Our Supreme Court has reached the merits of a PTI appeal even where a defendant's application was untimely. See State v. Johnson, 238 N.J. 119, 132 (2019). In that case, the defendant did pursue an appeal; in this case, defendant did not. However, as in Johnson, defendant should be permitted to make this untimely application because the record fails to include the prosecutor's all-important written statement of reasons. See id. at 128-29, 132. The prosecutor's failure to adhere to the process constitutes a legal error. Johnson states such

errors pose "'a relatively low threshold for judicial intervention'" because when the prosecutor commits a legal error, we "exercise independent judgment in fulfilling their responsibility to maintain the integrity and proper functioning of PTI as a whole." Id. at 129 (citing State v. Watkins, 193 N.J. 507, 520-21 (2008)). No trial judge or appellate panel can review whether a prosecutor's veto was an abuse of discretion without a baseline—the prosecutor's written analysis. Therefore, we remand to allow defendant to pursue his PTI remedies after the prosecutor fulfills the obligation to consider the application in light of the 2014 Directive and issue the requisite statement of reasons. Should the prosecutor reject the application, defendant has the right to appeal the decision to the trial judge in the ordinary course.

We are mindful of the Supreme Court's proscription in State v. Bell, 217 N.J. 335 (2014). There, the Court said: "We hold that PTI is a pretrial diversionary program that is not available to a defendant once the charges have been tried before . . . a jury and a guilty verdict has been returned." Id. at 338. But in that case, a defendant sought to upend the PTI process to gain an advantage no rule or statute allowed. After a jury convicted him of a third-degree offense, not the second-degree offense for which he was indicted, defendant then sought admission to PTI, reasoning that had he applied pre-trial

if charged only with the third-degree offense, he would have been admitted into the program. That argument was no more successful than a similar one made years earlier—that a defendant who pled guilty pursuant to a negotiated plea to a lesser, eligible offense, was therefore entitled to PTI. State v. Frangione, 369 N.J. Super. 258, 261 (App. Div. 2004).

As the Court in Bell noted, admission into PTI "following a jury trial and the return of a guilty verdict is the antithesis of the very purpose of the program." Bell, 217 N.J. at 349. Attempts at manipulating the system are prohibited by Frangione and Bell. But that is not occurring here. The prosecutor's seeming failure to adhere to the steps in the process, and to consider the Directive in effect for some time before defendant's arrest, lowers the bar for judicial intervention in order "to maintain the integrity and proper functioning of PTI[.]" Johnson, 238 N.J. at 129.

II.

Defendant also contends that the court erred in preventing him from proffering for the jury's consideration his Georgia license to carry weapons. We consider this point to be so lacking in merit as to not warrant much discussion in a written opinion. See R. 2:11-3(e)(1)(E).

We agree with the judge that the evidence was irrelevant to the statutory elements the State had to prove beyond a reasonable doubt.  Additionally, it would have been an invitation for the jury to engage in jury nullification.  Our courts have long decried jury nullification—the power to arbitrarily convict one while acquitting another—as "the power to act against the law, against the Legislature and the Governor who made the law" and "absolutely inconsistent with the most important value of Western democracy, that we should live under a government of laws and not of men."  State v. Ragland, 105 N.J. 189, 208-09 (1986).  This evidence's potential to confuse issues or mislead jurors greatly exceeded any probative value.  See N.J.R.E. 403.

III.

Finally, defendant contends his sentence was illegal and requires amendment because the State failed to offer any evidence rebutting the presumption that he should have received a non-custodial sentence given the 2014 Directive.  The fatal flaw with this argument is that the 2014 Directive is binding on prosecutors—not the court.  State v. Waters, 439 N.J. Super. 215, 238-39 (App. Div. 2015) (holding the 2014 Clarification "does not alter the validity or finality of judicial orders" and this court "must determine the validity

of a judicial order by applying the law, not the shifting policies of the parties, even the Attorney General.").

IV.

Although we affirm the conviction and the sentence, we remand for the prosecutor to respond to defendant's PTI application in light of the 2014 Directive and for defendant to proceed from there. Should defendant's PTI application be rejected, he has the right of appeal in the Law Division as in the ordinary course. Given this decision, defendant also has the right to apply for bail pending remand, should he decide to pursue the matter further.

Affirmed in part, but remanded for additional proceedings.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-1787-18