NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO.  A-0299-15T4

STATE OF NEW JERSEY,

    Plaintiff-Respondent,

v.

JOSHUA NICHOLSON,

    Defendant-Appellant.

_____

> **APPROVED FOR PUBLICATION**
>
> **August 31, 2017**
>
> **APPELLATE DIVISION**

Argued December 20, 2016 — Decided  August 31, 2017

Before Judges Ostrer, Leone, and Vernoia.

On appeal from Superior Court of New Jersey, Law Division, Somerset County, Indictment No. 13-12-0773.

Michael J. Rogers argued the cause for appellant (McDonald & Rogers, LLC, attorneys; Mr. Rogers, of counsel and on the briefs).

Steven A. Yomtov, Deputy Attorney General, argued the cause for respondent (Christopher S. Porrino, Attorney General, attorney; Garima Joshi, Deputy Attorney General, and Mr. Yomtov, of counsel and on the brief).

The opinion of the court was delivered by

LEONE, J.A.D.

Defendant Joshua Nicholson appeals his August 12, 2015 judgment of conviction.  He engaged in "upskirting," that is,

"taking pictures of women up their skirts." Nancy Danforth Zeronda, Note, Street Shootings: Covert Photography and Public Privacy, 63 Vand. L. Rev. 1131, 1133—34 (2010). He pled guilty to third-degree invasion of privacy under N.J.S.A. 2C:14-9(b) (2004), now renumbered N.J.S.A. 2C:14-9(b)(1).

Defendant challenges the trial court's denial of his motion to dismiss his indictment and of his motion for reconsideration. He claims the victim's intimate parts were not "exposed" under N.J.S.A. 2C:14-9(b) (2004) because the victim was wearing pantyhose. We hold that "exposed" means "open to view" and "visible," and that defendant violated N.J.S.A. 2C:14-9(b) (2004) because the victim's inner thighs and buttocks were open to view and visible through her sheer pantyhose. Defendant also argues N.J.S.A. 2C:14-9(b) (2004) did not apply because the Legislature in 2016 enacted a fourth-degree offense of filming "undergarment-clad intimate parts," N.J.S.A. 2C:14-9(b)(2). We hold the broader 2016 enactment did not alter the meaning of the 2004 statute. Finally, we reject defendant's challenge to the denial of his application for admission into pre-trial intervention (PTI). Accordingly, we affirm.

I.

The grand jury heard the following testimony. On October 18, 2013, a surveillance camera showed defendant looking around

nervously while walking in the aisles of a supermarket, which attracted the attention of a loss prevention officer. The officer observed defendant take out his cell phone and place it under the female victim's skirt. The officer then observed the cell phone's flash illuminate under the victim's skirt. Once defendant and the victim separated, defendant followed her into a different aisle and again pulled out his cell phone and placed it under the victim's skirt. The officer again saw the flash illuminate. As defendant was leaving the store, the officer confronted him and the police were called.

The victim did not know defendant and was unaware he had placed his cell phone under her skirt. After waiving his Miranda[1] rights, defendant admitted taking two videos under the victim's skirt without her consent. He also admitted he went to the supermarket for the purpose of recording such a video so he could watch it for his sexual gratification at a later time.

The grand jury charged defendant with two counts of third-degree invasion of privacy. N.J.S.A. 2C:14-9(b) (2004). After being indicted, defendant applied for admittance into PTI, which was rejected by the prosecutor. Defendant submitted supplemental materials, but the prosecutor again denied

---

[1] Miranda v. Arizona, 384 U.S. 436, 86 S. Ct. 1602, 16 L. Ed. 2d 694 (1966).

defendant admittance into PTI. Defendant appealed, and the trial court found the prosecution did not abuse its discretion in denying PTI.

Defendant filed a motion to dismiss the indictment. The trial court denied it, finding the State presented a prima facie case to the grand jury. Defendant filed a motion for reconsideration. At the request of both parties, the court viewed the videos from defendant's phone.

In its opinion, the trial court found the video footage revealed the victim's body under her skirt, including her inner thighs, buttocks, and groin. It did not appear the victim was wearing underwear covering her buttocks, but she was wearing pantyhose of varying degrees of sheerness. Specifically, the portion of pantyhose on her inner thighs was "extremely sheer," the portion on her buttocks was "slightly darker, but still sheer," and the groin was covered by "an opaque gusset."[2]

The trial court found "the video shows a clear visual of the inner thighs and buttocks" which were "clearly depicted" due to the "sheerness of the pantyhose." The court concluded "there

---

[2] Defendant's counsel stated the brief first video provided "a video depiction of the woman's private areas. You can see her inner thigh and I think you can even see part of her buttocks that are covered in pantyhose." He added that the second video was longer and "more clear." No one has argued the videos should be treated differently.

was exposure of the inner thighs and buttocks as the pantyhose was essentially see through in its sheerness." Therefore, the court ruled that "Defendant has recorded, without license or privilege to do so, [the] 'image of another person whose intimate parts are exposed, without consent and under circumstance in which a reasonable person would not expect to be observed' in violation of N.J.S.A. 2C:14-9(b)." Accordingly, the court denied defendant's motion for reconsideration.

Defendant conditionally pled guilty to both counts of third-degree invasion of privacy, "specifically reserv[ing] the right to appeal the denial of his motion to dismiss the indictment and motion for reconsideration based upon legal and factual insufficiency." In accordance with the plea agreement, defendant was sentenced to two years' non-custodial probation and a $1000 fine. Defendant was also ordered to complete a psychological evaluation, follow any recommended treatment, and have no contact with the victim.

On appeal, defendant argues:

> POINT 1 — DEFENDANT DID NOT VIOLATE THE INVASION OF PRIVACY STATUTE BECAUSE THE VICTIM'S INTIMATE PARTS WERE NOT EXPOSED WHEN DEFENDANT VIDEOTAPED HER WITH HIS CELL PHONE BECAUSE SHE WAS CLOTHED WITH LINGERIE UNDER HER SKIRT.

> POINT 2 — THE NEW JERSEY LEGISLATURE HAS REVEALED ITS INTERPRETATION THAT THE

RELEVANT SECTION OF THE INVASION OF PRIVACY STATUTE DOES NOT COVER DEFENDANT'S BEHAVIOR.

POINT 3 — THE PROSECUTOR'S REJECTION OF DEFENDANT FOR ADMISSION INTO PTI WAS A PATENT AND GROSS ABUSE OF DISCRETION.

II.

We begin by considering the nature of our review. "An indictment is presumed valid and should only be dismissed if it is 'manifestly deficient or palpably defective.'" State v. Feliciano, 224 N.J. 351, 380 (2016) (citation omitted). "A motion to dismiss is addressed to the discretion of the trial court, and that discretion should not be exercised except for 'the clearest and plainest ground.'" Ibid. (citation omitted).

"At the grand jury stage, the State is not required to present enough evidence to sustain a conviction. As long as the State presents 'some evidence establishing each element of the crime to make out a prima facie case,' a trial court should not dismiss an indictment." Ibid. (citations omitted). "[A] court examining a grand jury record should determine whether, 'viewing the evidence and the rational inferences drawn from that evidence in the light most favorable to the State, a grand jury could reasonably believe that a crime occurred and that the defendant committed it.'" Id. at 380-81 (citation omitted).

Defendant's notice of appeal contested "the trial judge's pretrial determinations that he violated the invasion of privacy

6

statute after an evidentiary hearing." Defendant is referring to the trial court's hearing and denial of his motion for reconsideration after viewing the upskirting videos he submitted. At that hearing, the parties agreed the court should view the upskirting videos taken by defendant, even though the grand jury was not shown the videos or provided with testimony as to what was recorded in the videos. This effectively resulted in a summary-judgment-type proceeding, in which the court reviewed anticipated trial evidence to determine whether it would be sufficient to satisfy the statute. However, the Rules of Court authorize summary judgment procedures only in civil cases. R. 4:46. The rules do not authorize summary judgment in criminal cases. See State v. Parker, 198 N.J. Super. 272, 278 (App. Div. 1984), certif. denied, 99 N.J. 239 (1985); State v. Bass, 191 N.J. Super. 347, 351 (Law Div. 1983).[3]

---

[3] Federal courts have reached a similar conclusion under the federal rules. "Unless there is a stipulated record, or unless immunity issues are implicated, a pretrial motion to dismiss an indictment is not a permissible vehicle for addressing the sufficiency of the government's [trial] evidence." United States v. DeLaurentis, 230 F.3d 659, 660-61 (3d Cir. 2000). Here, the parties did not clearly ask the trial court to address the sufficiency of the trial evidence, but they asked the court to reconsider a motion to dismiss the indictment based on evidence which apparently would be introduced only at trial. Arguably, the parties created a stipulated record.

Absent authorization in the rules, we do not endorse such a procedure.[4]

However, that procedure was used here at the request and with the consent of the parties, and neither party has challenged that procedure on appeal. Thus, in reviewing whether the evidence was sufficient to satisfy the statute, we, like the trial court, consider the videos submitted by defendant with his motion for reconsideration. Moreover, we defer to and accept the trial court's reasonable interpretation of the video. See State v. S.S., ___ N.J. ___, (2017) (slip op. at 24-25).

### III.

Defendant argues that, as the videos revealed the victim was wearing pantyhose under her skirt, her intimate parts were not "exposed" as required by N.J.S.A. 2C:14-9(b) (2004). We first address the meaning of that statute as enacted in 2004.

N.J.S.A. 2C:14-9(b) (2004) provided:

> An actor commits a crime of the third degree if, knowing that he is not licensed or privileged to do so, he photographs, films, videotapes, records, or otherwise reproduces in any manner, the image of another person whose intimate parts are exposed or who is engaged in an act of sexual penetration or

---

[4] Similarly, we do not endorse the State's partial presentation to the grand jury, or the parties' agreement that the trial court would determine the validity of the indictment based on evidence never considered by the grand jury.

> sexual contact, without that person's consent and under circumstances in which a reasonable person would not expect to be observed.

"Intimate parts" were and are defined as "sexual organs, genital area, anal area, inner thigh, groin, buttock or breast of a person." N.J.S.A. 2C:14-1(e).

However, the statute does not define "exposed" and neither this court nor our Supreme Court has interpreted its meaning as used in N.J.S.A. 2C:14-9(b) (2004). As the interpretation of a statute is an issue of law, "[a]ppellate courts review a trial court's construction of a statute de novo." State v. Revie, 220 N.J. 126, 132 (2014). We must hew to that standard of review.

"When construing a statute, our primary goal is to discern the meaning and intent of the Legislature. In most instances, the best indicator of that intent is the plain language chosen by the Legislature." State v. Gandhi, 201 N.J. 161, 176 (2010) (citation omitted); accord State v. Hudson, 209 N.J. 513, 529 (2012).

> The inquiry thus begins with the language of the statute, and the words chosen by the Legislature should be accorded their ordinary and accustomed meaning. If the language leads to a clearly understood result, the judicial inquiry ends without any need to resort to extrinsic sources.
>
> [Hudson, supra, 209 N.J. at 529.]

"When such [extrinsic] evidence is needed, we look to a variety of sources. Central among them is a statute's legislative history." Richardson v. Bd. of Trs., Police & Firemen's Ret. Sys., 192 N.J. 189 (2007).

### A.

We begin with the plain language of the statute. Ordinarily, words in a statue must "be given their generally accepted meaning, according to the approved usage of the language." N.J.S.A. 1:1-1. "In determining the common meaning of words, it is appropriate to look to dictionary definitions." Macysyn v. Hensler, 329 N.J. Super. 476, 485 (App. Div. 2000).

Giving "exposed" its generally accepted meaning, the plain language of N.J.S.A. 2C:14-9(b) (2004) encompasses defendant's conduct here. "Exposed" has long been defined as "open to view" or "not shielded or protected." E.g., Webster's Ninth New Collegiate Dictionary 438 (1990); accord Merriam-Webster's Collegiate Dictionary 441 (11th ed. 2014). The most pertinent definition of "expose" is "to cause to be visible or open to view." Webster's Ninth New Collegiate Dictionary, supra, at 438; Merriam-Webster's Collegiate Dictionary, supra, at 441; see Webster's II New College Dictionary 403 (3d ed. 2005) ("To make visible").

When defendant stuck a camera under the victim's skirt, the victim's inner thighs and buttocks were no longer shielded or protected, but were open to view and visible through her sheer pantyhose. The victim's inner thighs were particularly visible, as her pantyhose were "extremely sheer" there. Defendant's filming of the victim's visible inner thighs was itself sufficient to violate N.J.S.A. 2C:14-9(b) (2004). See State v. Gray, 206 N.J. Super. 517, 521-22 (App. Div. 1985), certif. denied, 103 N.J. 463 (1986).[5]

### B.

This reading of the statute is supported by its legislative history. In the 2002-2003 term, legislators introduced four bills in the General Assembly and one bill in the Senate prohibiting "video voyeurism" and "penalizing those who rely on tiny cameras and other [advanced] technological tools for sexual spying." E.g., Statement to Assemb. Bill No. 3426, 210th Leg., at 2 (Mar. 6, 2003); Statement to S. Bill No. 2366, 210th Leg., at 2 (Mar. 10, 2003); accord Statement to Assemb. Bill No. 3286, 210th Leg., at 2 (Feb. 4, 2003); Statement to Assemb. Bill No. 3302, 210th Leg., at 4 (Feb. 4, 2003). The Senate bill and one Assembly bill prohibited only photographing or filming "a person

---

[5] By contrast, the victim's groin was not open to view, visible, or exposed because it was covered by an opaque gusset.

in a state of undress" while "in a place where that person would have a reasonable expectation of privacy." Assemb. Bill No. 3426, 210th Leg., at 2 (Mar. 6, 2003); S. Bill No. 2366, 210th Leg., at 2 (Mar. 10, 2003). The sponsor's statements indicated "[t]he current law is not well tailored to cope with video voyeurs who conceal devices utilizing advanced technology and disseminate images of undressed individuals on the Internet and elsewhere." Statement to Assemb. Bill No. 3426, supra, at 2; Statement to S. Bill No. 2366, supra, at 2.

The other Assembly bills instead used the "intimate parts are exposed" language. Assemb. Bill No. 3302, 210th Leg., at 2 (Feb. 4, 2003); Assemb. Bill No. 3286, 210th Leg., at 2 (Feb. 4, 2003); Assemb. Bill No. 57, 210th Leg., at 2 (prefiled for 2002). One Assembly bill also penalized a person who used a concealed camera to film "another person, under circumstances in which a reasonable person would not expect to be observed, under or through the clothing worn by that other person." Assemb. Bill No. 3286, supra, at 2.

The Assembly Judiciary Committee adopted a substitute bill which used the "intimate parts are exposed" language. Assemb. Comm. Substitute for Assemb. Bill Nos. 3302, 3286, 3426, & 57, 210th Leg., at 2-3 (May 8, 2003). The Committee explained the substitute bill penalized an individual who "observes another

person with the knowledge that person may expose intimate parts . . . or videotape[s] or otherwise record[s] that person or disclose[s] such images of the same." Assemb. Judiciary Comm. Statement to Assemb. Comm. Substitute for Assemb. Bill Nos. 3302, 3286, 3426, & 57, 210th Leg., at 1 (May 8, 2003).

The Senate Judiciary Committee replaced the Senate's "state of undress" bill with a Senate Committee Substitute for Senate Bill No. 2366 using the "intimate parts are exposed" language. S. Comm. Substitute for S. Bill No. 2366, 210th Leg., at 1-2 (Nov. 24, 2003). The Committee explained its "amendments make this bill identical to [the] Assembly Committee Substitute" and reiterated that the substitute bill penalized an individual who "observes another person with knowledge that the person may expose intimate parts . . . or who videotapes or otherwise records the image of that person or discloses such images." S. Judiciary Comm. Statement to S. Comm. Substitute for S. Bill No. 2366, 210th Leg., at 2-3 (Nov. 24, 2003). The Legislature enacted the Senate substitute bill without change. L. 2003, c. 206, § 1.

This legislative history shows the legislators' concerns included the situation before us - video voyeurism using small cameras to film or photograph under and through the clothing of a victim which may expose intimate parts. It also shows the

Legislature rejected the requirement that the victim be "in a 'state of undress'" in favor of penalizing any photographing or filming where "the intimate parts are exposed." Compare Statement to S. Bill No. 2366, supra, at 3, with S. Comm. Substitute for S. Bill No. 2366, supra, at 1-2. Thus, the legislative history supports the plain language reading that the statute applies if the victim's intimate parts are exposed — open to view and visible — even if not undressed.

### C.

Defendant compares this case to Commonwealth v. Robertson, 5 N.E.3d 522 (Mass. 2014), but that case involved much different and narrower statutory language. The Massachusetts statute read: "Whoever willfully photographs, videotapes or electronically surveils another person who is nude or partially nude, with the intent to secretly conduct or hide such activity . . . shall be punished by imprisonment[.]" Id. at 526 (emphasis added) (quoting Mass. Gen. Laws ch. 272, § 105(b) (2008)). Accordingly, it was an element of the Massachusetts statute that "the subject was . . . nude or partially nude." Ibid.

Robertson involved the upskirting of a woman on a Boston trolley. Robertson argued the "clothed female passenger . . . was not 'nude or partially nude.'" Ibid. The Massachusetts

court agreed. Id. at 528. The Massachusetts court noted the dictionary definition of "nude" is "'naked'; 'devoid of clothing'; 'unclothed.'" Id. at 528 n.13 (citation omitted). Specifically, the court ruled that a woman "who is wearing a skirt, dress, or the like covering these parts of her body is not a person who is 'partially nude,' no matter what is or is not underneath the skirt by way of underwear or other clothing." Ibid. As a result, the court found the Massachusetts statute "does not apply to photographing . . . persons who are fully clothed and, in particular, does not reach the type of upskirting that the defendant is charged with attempting to accomplish." Id. at 529. The court acknowledged a woman's "expectation of privacy in not having a stranger secretly take photographs up her skirt . . . is eminently reasonable," but ruled the Massachusetts statute did not address that situation. Ibid.

Robertson is plainly distinguishable. Indeed, it illustrates the much greater breadth of N.J.S.A. 2C:14-9(b) (2004). Our Legislature did not require the victim be nude or partially nude. Instead, N.J.S.A. 2C:14-9(b) (2004) required only that the victim's intimate parts be "exposed," that is, open to view and visible.

Here, the victim's inner thighs and buttocks were "exposed," even though she was not "nude or partially nude," because they were open to view and visible through her "see through" pantyhose. Accordingly, defendant's conduct fell within N.J.S.A. 2C:14-9(b) (2004).

## IV.

We next consider defendant's arguments that his conduct in 2013 did not fall within N.J.S.A. 2C:14-9(b) (2004) because of subsequent legislative action, namely a failed attempt to amend it in the 216th Legislature and an amendment later enacted by the 217th Legislature. However, neither legislative effort undermines the interpretation of N.J.S.A. 2C:14-9(b) (2004) or its application to defendant's offense. "No offense committed . . . shall be discharged, released or affected by the repeal or alteration of the statute" after the offense was committed. N.J.S.A. 1:1-15; accord State ex rel. C.F., 444 N.J. Super. 179, 188 (App. Div. 2016).

## A.

Defendant first cites a failed attempt in the 216th Legislature to amend N.J.S.A. 2C:14-9(b) (2004) in response to Robertson. In 2014, a senator introduced a bill which sought to add a third-degree offense penalizing the photographing or filming of "the image of another person's intimate parts under

16

or around the person's clothing" and to provide that the definition of "intimate parts" applied "whether clothed of unclothed." S. Bill. No. 1847, 216th Leg., at 3-4 (Mar. 24, 2014). The senator's statement accompanying the bill stated: "This bill clarifies that it is a crime under this State's invasion of privacy law to secretly photograph underneath a person's clothing. Referred to as 'upskirting,' this practice occurs when perpetrators use their cell phones to take pictures and record video under the skirts and dresses of unsuspecting victims[.]" Statement to S. Bill No. 1847, 216th Leg., at 5 (Mar. 24, 2014) (emphasis added). The senator stated:

> In response to a court decision ruling that upskirting was not illegal, a state law was recently enacted in Massachusetts criminalizing the practice. It is the sponsor's intent to similarly protect women in this State from the vile and degrading practice of upskirting by making it clear that it constitutes an invasion of privacy under criminal and civil law.
>
> [Id. at 6 (emphasis added).]

A member of the Assembly introduced a different bill seeking to add a fourth-degree offense penalizing the photographing or filming of intimate parts "whether naked or clothed." Assemb. Bill No. 3864, 216th Leg., at 2 (Oct. 27, 2014). The member stated that the bill would "establish[] the crime of 'upskirting,'" that "[p]rosecuting the crime of

upskirting . . . has prove[n] challenging in other states" because the victim was "typically clothed," and that the bill would add the fourth-degree offense "to prevent such challenges in New Jersey." Statement to Assemb. Bill No. 3864, 216th Leg., at 4-5 (Oct. 27, 2014).

Neither bill altered the language of N.J.S.A. 2C:14-9(b) (2004) or indicated the 2004 statute did not cover the photographing or filming of visible intimate parts. Rather, each sought to add a provision covering the filming of "clothed" intimate parts without requiring them to be visible. Ibid.

In any event, neither bill was approved by committee, let alone by either house. Rather, the Assembly passed a different substitute bill, which died in the Senate after Senate Committee approval of an identical Senate version. See Assemb. Comm. Substitute for Assemb. Bill Nos. 3864, 3938, & 2992, 216th Leg., at 2 (June 4, 2015); Assemb. Judiciary Comm. Statement to Assemb. Comm. Substitute for Assemb. Bill Nos. 3864, 3938, & 2992, 216th Leg., at 1 (June 4, 2015); S. Judiciary Comm. Statement to S. Comm. Substitute for S. Bill. No. 1847, 216th Leg., at 1 (Dec. 17, 2015).

Defendant argues the unsuccessful bills somehow changed the plain meaning and intent of N.J.S.A. 2C:14-9(b) (2004). However, "unsuccessful attempts to amend a statute are of little

use in determining the intent of the Legislature when enacting the original law." Perez v. Rent-A-Ctr., Inc., 186 N.J. 188, 217 (2006). "[S]ubsequent legislative history . . . is a particularly dangerous ground on which to rest an interpretation of a prior statute when it concerns . . . a proposal that does not become law." Pension Benefit Guar. Corp. v. LTV Corp., 496 U.S. 633, 650, 110 S. Ct. 2668, 2678, 110 L. Ed. 2d 579, 597 (1990).

We reject defendant's claim that the unsuccessful bills show N.J.S.A. 2C:14-9(b) (2004) did not already prohibit upskirting where the victim's intimate parts were visible. "Although the failure to adopt an amendment can, at times, indicate a conscious decision to reject the amendment's provisions, such inaction conversely may signal that the law as written already achieves the sought-after objective." Am. Civil Liberties Union of N.J. v. Hendricks, 445 N.J. Super. 452, 470 (App. Div.) (citation omitted) (citing 2A Norman J. Singer & J.D. Shambie Singer, Sutherland Statutory Construction § 48:18, at 633-37 (7th ed. 2014) [hereinafter Sutherland]), certif. granted, 228 N.J. 440 (2016); see Pension Benefit Guar. Corp., supra, 496 U.S. at 650, 110 S. Ct. at 2678, 110 L. Ed. 2d at 597.

A-0299-15T4

Defendant also cites an amendment passed by the 217th Legislature. In 2016, the Legislature enacted a bill identical to the substitute bills of the prior session. Assemb. Bill No. 156 (First Reprint), 217th Leg. (2016), enacted as L. 2016, c. 2. The amendment renumbered N.J.S.A. 2C:14-9(b) (2004) as subsection (b)(1), with no change in language of that third-degree offense. The amendment also added a fourth-degree offense as subsection (b)(2):

> An actor commits a crime of the fourth degree if, knowing that he is not licensed or privileged to do so, he photographs, films, videotapes, records, or otherwise reproduces in any manner, the image of the undergarment-clad intimate parts of another person, without that person's consent and under circumstances in which a reasonable person would not expect to have his undergarment-clad intimate parts observed.
>
> [L. 2016, c. 2, § 1 (emphasis added).]

Thus, the 2016 amendment extended the coverage of N.J.S.A. 2C:14-9(b) by making it a fourth-degree offense to photograph or film "undergarment-clad intimate parts" without requiring they be visible. N.J.S.A. 2C:14-9(b)(2) (2016); see Merriam-Webster's Collegiate Dictionary, supra, at 227 (defining "clad" as "being covered or clothed"). The statements accompanying the bills and issued by the committees stated N.J.S.A. 2C:14-9(b) (2004) already made it a third-degree offense to photograph or

film where "intimate parts are exposed," and that the bill "expand[ed] the crime of invasion of privacy to include 'upskirting': photographing or filming the image of the undergarment-clad intimate parts of another." Assemb. Bill No. 156, 217th Leg., at 2 (prefiled for 2016); Assemb. Judiciary Comm. Statement to Assemb. Bill No. 156, 217th Leg., at 1 (Feb. 8, 2016); S. Law & Public Safety Comm. Statement to Assemb. Bill No. 156 (First Reprint), 217th Leg., at 1 (Mar. 3, 2016). Thus, the statements made clear the bills "expand[ed]" N.J.S.A. 2C:14-9(b) (2004) to prohibit photographing or filming intimate parts even if they were not visible because they were concealed by undergarments. Assemb. Judiciary Comm. Statement to Assemb. Bill No. 156, supra, at 1; S. Law & Public Safety Comm. Statement to Assemb. Bill No. 156, supra, at 1.

Although the 2016 amendment left unchanged the language of N.J.S.A. 2C:14-9(b) (2004)'s third-degree offense for filming visible intimate parts, defendant argues it showed the 2004 statute did not cover his behavior. We reject his argument. The plain meaning of the unchanged third-degree offense remains unambiguous, and its meaning and legislative history is unaltered. The amendment expanded the statute by adding a provision penalizing the photographing or filming of "undergarment-clad intimate parts" which are not visible. That

expansion in no way invalidates its existing penalization of photographing or filming visible intimate parts.  See N.J.S.A. 2C:14-9(b)(1), (2).

To the extent the added provision also encompasses photographing or filming intimate parts visible through sheer undergarments, "'[t]he mere fact that two statutes overlap in prohibiting the same act does not mean that the later law automatically repeals the earlier one pro tanto'" or precludes prosecution.  State v. Gledhill, 67 N.J. 565, 573 (1975) (citation omitted).  "It is well settled that specific conduct may violate more than one statute."  State ex rel. M.C., 303 N.J. Super. 624, 629 (App. Div. 1997).  A legislature "may choose a belt-and-suspenders approach to promote its policy objectives" by amending a statute to add an overlapping provision.  See McEvoy v. IEI Barge Servs., Inc., 622 F.3d 671, 677 (7th Cir. 2010).  "[S]ometimes, . . . legislatures adopt an amendment only because it better expresses an idea already embodied by the original bill[.]"  Sutherland, supra, § 48:18, at 635-37.  In any event, "'the views of subsequent [Legislatures] cannot override the unmistakable intent of the enacting one.'"  Exxon Corp. v. Hunt, 97 N.J. 526, 539 n.8 (1984) (citation omitted), aff'd in part, rev'd in part on other grounds, 475 U.S. 355, 106 S. Ct. 1103, 89 L. Ed. 2d 364 (1986).

Furthermore, the 2016 amendment's grading of the offenses is consistent with the continued applicability of N.J.S.A. 2C:14-9(b) (2004) to defendant's conduct. Under the amendment, if an upskirting defendant photographs or films only undergarments that cover and conceal an intimate part, he can be charged with the fourth-degree offense under N.J.S.A. 2C:14-9(b)(2), but he can be charged with a third-degree offense under N.J.S.A. 2C:14-9(b)(1) if the intimate part is visible through an undergarment, as it is a more intrusive and humiliating experience for the victim.[6]

Defendant cites the rule of lenity. "That doctrine 'holds that when interpreting a criminal statute, ambiguities that cannot be resolved by either the statute's text or extrinsic aids must be resolved in favor of the defendant.'" State v. Rangel, 213 N.J. 500, 515 (2013) (citation omitted). "'It does not invariably follow, that every time someone can create an argument about the meaning of a penal sanction, the statute is impermissibly vague, or that the lowest penalty arguably applicable must be imposed.'" State v. Olivero, 221 N.J. 632, 639-40 (2015) (citation omitted). "Instead, the rule of lenity

---

[6] A defendant may also be chargeable with the third-degree offense of attempt to commit a violation of N.J.S.A. 2C:14-9(b)(1) if his offense satisfies the requirements of N.J.S.A. 2C:5-1.

is applied only if a statute is ambiguous, and that ambiguity is not resolved by a review of 'all sources of legislative intent.'"  State v. Regis, 208 N.J. 439, 452 (2011) (citation omitted).  Here, the statute's text and all extrinsic aids show defendant's conduct fell within N.J.S.A. 2C:14-9(b) (2004).  Therefore, the trial court did not err in denying the motion to dismiss the indictment.

V.

 Defendant next challenges the trial court's order upholding the prosecutor's denial of his application for PTI.  Our "scope of review is severely limited."  State v. Negran, 178 N.J. 73, 82 (2003).  "Reviewing courts must accord the prosecutor '"extreme deference."'"  State v. Waters, 439 N.J. Super. 215, 225 (App. Div. 2015) (quoting State v. Nwobu, 139 N.J. 236, 246 (1995).  "In order to overturn a prosecutor's rejection, a defendant must 'clearly and convincingly establish that the prosecutor's decision constitutes a patent and gross abuse of discretion.'"  Id. at 226 (quoting State v. Watkins, 193 N.J. 507, 520 (2008)).  We apply the same standard as the trial court, and review its decision de novo.  Ibid.

Defendant claims the prosecutor did not consider factors favorable to him.  In fact, the prosecutor specifically noted defendant's age, his marriage, his two children, his employment,

24                                              A-0299-15T4

his lack of criminal history, and that he sought psychological treatment after PTI denial.

The prosecutor determined defendant was not an appropriate candidate for PTI after considering "all of the factors," particularly "[t]he nature of the offense," "[t]he facts of the case," "[t]he desire of the . . . victim [not] to forego prosecution," and "[t]he needs and interests of society," and that "the crime is of such a nature that the value of supervisory treatment would be outweighed by the public need for prosecution." N.J.S.A. 2C:43-12(e)(1), (2), (4), (7), (14).

In particular, the prosecutor focused on defendant's "deviant sexual arousal and/or interest" and his repeated filming of the victim despite his knowledge of "the 'disgusting' nature of his conduct." The prosecutor noted that defendant previously engaged in the same conduct and that "the present offense constitutes part of a continuing pattern of 'antisocial behavior,'" citing defendant's psychological evaluation. The prosecutor found "such behavior requires more structured, rigorous supervision that only traditional probation can offer" and that such treatment would be more effective than PTI. See N.J.S.A. 2C:43-12(e)(5).

Thus, we reject defendant's claim that the only basis for the prosecutor's decision was the victim's opposition to PTI.

Moreover, the victim's opposition to PTI "is an appropriate factor to consider under Guideline 3 and N.J.S.A. 2C:43-12(e)(4)." State v. Imbriani, 291 N.J. Super. 171, 180 (App. Div. 1996). The prosecutor properly considered the devastating effect of defendant's conduct on the victim, who became withdrawn and frightened and who opposed PTI to deter defendant from victimizing anyone else. Accordingly, the trial court did not err in finding no patent or gross abuse of discretion in the prosecutor's denial of PTI.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION