# RECORD IMPOUNDED

**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-1639-23

STATE OF NEW JERSEY,

    Plaintiff-Appellant,

v.

D.A.G.,[1]

    Defendant-Respondent.

_____

Submitted August 13, 2024 – Decided August 27, 2024

Before Judges Firko and Puglisi.

On appeal from the Superior Court of New Jersey, Law Division, Ocean County, Indictment No. 23-08-1538.

Bradley D. Billhimer, Ocean County Prosecutor, attorney for appellant (Samuel Marzarella, Chief Appellate Attorney, of counsel; William Kyle Meighan, Supervising Assistant Prosecutor, on the brief).

Respondent has not filed a brief.

PER CURIAM

---

[1] We use initials to protect the victims' privacy. R. 1:38-3(c)(12).

The State appeals from the Law Division's January 25, 2024 order admitting defendant D.A.G. into the Pretrial Intervention Program (PTI) over the prosecutor's objection. The State contends the motion judge erred by finding the prosecutor's decision rejecting defendant from PTI constituted a patent and gross abuse of discretion. We reverse and remand.

I.

In August 2022, R.G. rented a home in Lavallette for a week with her family, including her sister C.S., their young adult daughters and defendant, who was R.G.'s long-term boyfriend. On August 30, 2022, a day or two after she arrived at the house, C.S.'s daughter discovered what appeared to be a cell phone charger plugged into an outlet in the bathroom that was shared by the occupants of the house. Upon further inspection, she realized the device had a camera lens and a slot containing a memory card, and was positioned facing a mirror. R.G. called the police, who responded to the house. An officer retained the device in evidence and, after obtaining a search warrant, conducted a forensic examination on the memory card in February 2023.

Forensic analysis of the card revealed thirty-nine video clips. In two videos, defendant is seen in his home plugging in and then removing the device, moving the device to another outlet and "manipulating it." A third clip showed

defendant in the rental home bathroom "manipulating the device, standing out of focus of the camera, and then reappearing. When [defendant] reappear[ed] in the footage, he remove[d] the device and plug[ged] it into the higher outlet. [He] then [took] a step back, pause[d] for a few seconds, and exit[ed] the bathroom." Another clip showed defendant "move a dresser out of the bathroom and then manipulate the device again." Ten videos showed R.G. or C.S. using the bathroom or taking a shower, and the last video showed C.S.'s daughter discovering the device and unplugging it.

Defendant was charged with and subsequently indicted on two counts of third-degree invasion of privacy, N.J.S.A. 2C:14-9(b)(1), for videotaping R.G. and C.S.'s exposed intimate parts without their consent; and one count of fourth-degree invasion of privacy, N.J.S.A. 2C:14-9(b)(2), for videotaping R.G.'s undergarment-clad intimate parts without her consent.

Defendant applied for PTI and, by letter dated June 20, 2023, the Ocean Vicinage PTI Director rejected defendant's application and provided him a notice of reasons for her decision. Defendant appealed the decision to the PTI judge pursuant to Rule 3:28 after which, by letter dated July 11, 2023, the State advised defendant it joined the Director's rejection.

A-1639-23

The State found eleven of the seventeen nonexclusive criteria set forth in N.J.S.A. 2C:43-12(e) were relevant to its decision: the nature of the offense (factor one); the facts of the case (factor two); the motivation and age of defendant (factor three); the desire of the complainant or victim to forego prosecution (factor four); the existence of personal problems or character traits which may be better addressed through supervisory treatment (factor five); the likelihood the applicant's crime is related to a condition or situation that would be conducive to change through his participation in supervisory treatment (factor six); the needs and interests of the victim and society (factor seven); consideration of whether or not prosecution would exacerbate the social problem that led to the criminal act (factor eleven); whether or not the crime is of such nature that the value of supervisory treatment would be outweighed by the public need for prosecution (factor fourteen); whether or not the applicant's involvement with other people in the crime charged or in other crime is such that the interest of the State would be best served by processing his case through traditional criminal justice procedures (factor fifteen); and the harm done to society by abandoning prosecution would outweigh the benefits of admission (factor seventeen).

4

The State detailed its reasons for each of those eleven factors. Considering factor one, the State noted defendant was R.G.'s boyfriend for years, and intentionally installed the camera in the bathroom to capture the intimate parts of the individuals staying at the house. The two separate victims "each suffered serious privacy violations because of defendant's actions." In factor two, the State also noted defendant failed to claim ownership of the device for seven months after the incident, when he was arrested. At that point, defendant gave a statement admitting he was the individual seen on the video but denied knowing it was a recording device, instead claiming he believed it to be an e-cigarette charger.

As to factor three, the State noted defendant was fifty-seven years old at the time of the offense and had "acted like a member of [the victims'] family for years." Because of his age, the State contended he was "old enough and mature enough to know better."

The State found factors four and seven also weighed against admission, because the victims were "devastated" by defendant's actions and were vehemently opposed to his admission into PTI. It also found factor fourteen because there were multiple victims and therefore the public need for prosecution outweighed the value of supervisory treatment. Factor seventeen

5

was supported because of the serious need to deter individuals from committing crimes such as the ones here.

In considering factors five, six and eleven, the State noted defendant had not submitted anything to support these factors and therefore they weighed against admission into PTI. It likewise found factor fifteen inapplicable, but then found it weighed against admission.

The State conceded that the remaining factors weighed in favor of admission into PTI: the extent to which the applicant's crime constitutes part of a continuing pattern of anti-social behavior (factor eight); the applicant's record of criminal and penal violations and the extent to which he may present as a substantial danger to others (factor nine); crime of assaultive nature (factor ten); the history of use of physical violence toward others (factor twelve); any involvement of the applicant with organized crime (factor thirteen); and whether or not the applicant's participation in PTI will adversely affect the prosecution of co-defendants (factor sixteen).

Because defendant received the State's rejection letter after he filed his appeal, he submitted a supplemental brief to the PTI judge. Specifically, defendant argued the State's rejection constituted a patent and gross abuse of discretion because it relied on inappropriate factors and gave undue weight to

A-1639-23

others. In support, defendant contended the State did not explain how factors one and two weighed against entry into PTI; improperly considered defendant's age in factor four; deemed factors five, six, eleven and fifteen non-applicable but then concluded they weighed against admission; only considered the victims' desires and not society's needs and interests in factors seven and fourteen; and impermissibly relied on a generic need to deter others in factor seventeen.

At oral argument on January 12, 2024, the prosecutor conceded the neutral or inapplicable factors should not have weighed for or against admission into PTI, but argued the remaining applicable factors supported the State's rejection. The judge issued a written decision on January 23, 2024, granting defendant's motion. After this appeal was filed, the judge filed an addendum to the prior order amplifying the reasons for her decision pursuant to Rule 2:5-1(d).

## II.

We begin our analysis by recognizing certain well-established principles. The scope of judicial review of the prosecutor's rejection of PTI is "severely limited." State v. Negran, 178 N.J. 73, 82 (2003). Deciding whether to permit diversion to PTI "is a quintessentially prosecutorial function." State v. Wallace, 146 N.J. 576, 582 (1996); see also State v. Roseman, 221 N.J. 611, 624 (2015). "Prosecutorial discretion in this context is critical for two reasons. First,

because it is the fundamental responsibility of the prosecutor to decide whom to prosecute, and second, because it is a primary purpose of PTI to augment, not diminish, a prosecutor's options." State v. Nwobu, 139 N.J. 236, 246 (1995) (citation omitted).

A "[d]efendant generally has a heavy burden when seeking to overcome a prosecutorial denial of his admission into PTI." State v. Watkins, 193 N.J. 507, 520 (2008) (internal citation omitted). Therefore, "to overturn a prosecutor's rejection, a defendant must 'clearly and convincingly establish that the prosecutor's decision constitutes a patent and gross abuse of discretion.'" State v. Nicholson, 451 N.J. Super. 534, 553 (App. Div. 2017) (citation omitted). "A patent and gross abuse of discretion is defined as a decision that 'has gone so wide of the mark sought to be accomplished by PTI that fundamental fairness and justice require judicial intervention.'" Watkins, 193 N.J. at 520 (quoting Wallace, 146 N.J. at 582-83).

Accordingly, courts give prosecutors "broad discretion" in determining whether to divert a defendant into PTI. State v. K.S., 220 N.J. 190, 199 (2015). That discretion is not, however, without limits. Negran, 178 N.J. at 82. "A rejected applicant must be provided with a clear statement of reasons for the denial." Ibid. Further, the decision whether to admit a defendant to a PTI

program is "'primarily individualistic in nature' and a prosecutor must consider an individual defendant's features that bear on his or her amenability to rehabilitation." Nwobu, 139 N.J. at 255 (quoting State v. Sutton, 80 N.J. 110, 119 (1979)).

"N.J.S.A. 2C:43-12(e) sets forth a list of seventeen nonexclusive factors that prosecutors must consider in connection with a PTI application." State v. Johnson, 238 N.J. 119, 128 (2019). Rule 3:28 contains similar considerations, and also requires:

> If the crime was (i) part of organized criminal activity; or (ii) part of a continuing criminal business or enterprise; or (iii) deliberately committed with violence or threat of violence against another person; or (iv) a breach of the public trust where admission to a PTI program would deprecate the seriousness of defendant's crime, the defendant's application should generally be rejected.
>
> [R. 3:28-4(b)(1).]

We apply the same standard of review of a prosecutor's rejection of a PTI application as the trial court and review the court's decision de novo. State v. Waters, 439 N.J. Super. 215, 226 (App. Div. 2015). We will interfere with a prosecutor's decision only in "the most egregious examples of injustice and unfairness." Ibid. (internal citations and quotations omitted).

Guided by those standards, we conclude the judge erred in ordering defendant's admission into the PTI program over the prosecutor's objection. Given the prosecutor's concessions the inapplicable factors were neutral, defendant failed to demonstrate the decision was not based on a thorough consideration of all appropriate factors and constituted a gross and patent abuse of discretion.

The prosecutor properly emphasized the nature and circumstances of the offense and facts of the case, which involved a serious invasion of privacy against two individuals with whom defendant had a long-term familial relationship. While installing the camera in a strategic location was a "single occurrence," defendant knew that multiple family members would be using the bathroom, including the victims' young adult daughters.

We find no error with the State's noting defendant lacked accountability for ownership of the device for months, until he was charged. The State merely cited this fact in the context of the overall facts and circumstances of the case. The State did not suggest that defendant should have confessed to law enforcement that he surreptitiously recorded the victims. Its concern was that defendant, who was considered a member of the victims' family, failed to acknowledge ownership of the device to them. Contrary to the judge's finding,

we are satisfied the State's position in this regard did not violate defendant's right against self-incrimination.

The State also gave appropriate weight to the victims' requests to proceed with prosecution and took into account the needs and interests and the victims. Given the personally invasive nature of the offenses, the victims' input is particularly important here. The charges are not theft or property offenses where the victims can be compensated for a monetary loss and, as explained in their respective vehement objections, defendant's invasion of their privacy continues to impact their well-being.

We disagree with the judge's determination that the State's consideration of defendant's age was "age discrimination." The State recognized defendant, at age fifty-seven, did not have a criminal record, and accorded him that mitigating factor. However, considering the motivation and age of defendant, the prosecutor's statement that defendant "should have known better," while somewhat clichéd, reflected the State's finding that these offenses were not youthful transgressions but rather calculated, intentional acts.

Given the facts of this case, the State also did not err in determining the public need for prosecution in this case outweighed the value of supervisory treatment, and the harm done to society by abandoning prosecution would

outweigh the benefits of admission into PTI. Although the judge found the State's explanation in this regard to be lacking, we are satisfied the State considered the particular facts and circumstances of this case in making its decision.

In our evaluation of the case, "[t]he question is not whether [the court] agree[s] or disagree[s] with the prosecutor's decision, but whether the prosecutor's decision could not have been reasonably made upon weighing the relevant factors." Nwobu, 139 N.J. at 254. After excising the inapplicable factors, we are convinced from our review of the record that the prosecutor considered, weighed and balanced the requisite factors, including the facts and circumstances of the offenses, the wishes of the victims and needs of society, and the individual characteristics of defendant. Because the State's rejection of defendant's PTI application was not an egregious example of injustice or unfairness, we reverse the order entering defendant into the PTI program and remand for further proceedings.

Reversed and remanded. We do not retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

12