# RECORD IMPOUNDED

**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-1790-24

STATE OF NEW JERSEY,

    Plaintiff-Appellant,

v.

N.C.,

    Defendant-Respondent.

_____

Submitted September 23, 2025 – Decided October 3, 2025

Before Judges Gilson and Vinci.

On appeal from the Superior Court of New Jersey, Law Division, Cape May County, Indictment No. 24-08-0379.

Jeffrey Sutherland, Cape May County Prosecutor, attorney for appellant (James E. Moore, Assistant Prosecutor, of counsel and on the briefs).

Klineburger & Nussey, attorneys for respondent (Richard F. Klineburger, III, on the brief).

PER CURIAM

Pursuant Rule 2:2-3(b)(1), the State appeals from a February 14, 2025 order enrolling defendant N.C.[1] into the pretrial intervention program (PTI) over its objection. Having reviewed the record and applicable law, we reverse.

The State alleges that on June 26, 2024, at approximately 10:50 p.m. Patrolman Christopher Rudy of the Middle Township police department was traveling south on County Road 657 in Cape May Court House when he observed defendant's vehicle passing cars at a high rate of speed. Defendant began driving behind Patrolman Rudy, at times dangerously close to his vehicle. Patrolman Rudy allowed defendant to pass and conducted a motor vehicle stop.

Defendant pulled over but refused to identify herself. After Patrolman Rudy attempted to open defendant's locked driver's side door, she fled. Defendant stopped again a short distance from the original stop. Patrolman Rudy approached the vehicle, ordered defendant out of the vehicle, and informed her she was under arrest. Defendant failed to comply and, after another officer arrived, again fled the scene. The officers did not pursue defendant's vehicle.

Sergeant Jonas McInnis of the Middle Township police department subsequently observed defendant's vehicle traveling at an excessive rate of

---

[1] We use initials to protect medical, psychiatric, and psychological records, reports, and evaluations. R. 1:38-3(a)(2).

speed in a reckless manner southbound on Route 9 in Cape May Court House. He followed defendant onto the Garden State Parkway and initiated a motor vehicle stop. Defendant exited the highway and pulled over. County dispatch advised Patrolman McInnis the same vehicle had just fled from a traffic stop.

Sergeant McInnis approached defendant's vehicle and ordered defendant to exit the vehicle. After defendant refused and Sergeant McInnis attempted to open the locked driver's side door, defendant fled in a reckless manner at a high rate of speed. Sergeant McInnis did not pursue the vehicle.

Sergeant McInnis contacted the vehicle's registered owner, defendant's father, who informed him that he and defendant were at a hotel in North Wildwood. After he arrived at the hotel, defendant refused to come out of her room. Defendant's father invited Sergeant McInnis into the hotel room where he found defendant lying in bed and informed her she was being arrested for eluding a lawful traffic stop on two occasions. Defendant argued with Sergeant McInnis, advised him that she would not submit to arrest, and began removing an unknown item from a bag. After a brief struggle, defendant was taken into custody.

The State moved for pretrial detention, which was denied. On July 1, 2024, defendant was released on pre-trial monitoring level three conditions.

A-1790-24

Among other conditions, she was ordered "not [to] commit any offense" and to "undergo a mental health evaluation" to be scheduled within seven days of her release.

On August 5, 2024, pre-trial services filed a violation of monitoring (VOM). The VOM alleged defendant was arrested in Pennsylvania while on pretrial release for harassment, possession of drug paraphernalia, criminal trespass, and simple assault, and failed to schedule a mental health evaluation as required.

On August 6, 2024, a Cape May County grand jury returned an indictment charging defendant with two counts of second-degree eluding, N.J.S.A. 2C:29-2(b), and one count of third-degree resisting arrest, N.J.S.A. 2C:29-2(a)(3)(b). That same day, the State filed a motion to revoke defendant's release based on the VOM, which was granted on September 4, 2024.

On November 20, 2024, defendant submitted an application for admission to PTI, accompanied by a statement of extraordinary and compelling circumstances that justify consideration of the application as required by Rule 3:28-3(b)(1). Defendant argued "essentially this matter involves a situation whereby her reaction to the stop triggered her [p]ost[-][t]raumatic [s]tress

[d]isorder (PTSD) which stems from her being abducted by the ring leader of a sex trafficking ring in the Commonwealth of Pennsylvania."

In support of that claim, she attached a news article from October 2019 that reported defendant and her friend left home "on the afternoon of Sept[ember] 21[,] and took a train to Philadelphia late the next night, according to information [defendant] provided to police. [Defendant] . . . relayed that the girls met some people in the city that they did not know" and defendant "left on the morning of Sept[ember] 23 to return home, but [her friend] stayed behind." She also attached a press release regarding the sentencing of an individual from Philadelphia who, in September 2019, "knowingly harbored, maintained, and advertised a minor, knowing the minor would be caused to engage in a commercial sex act."

Defendant provided medical records establishing she was diagnosed with PTSD and other mental illnesses, received inpatient behavioral health treatment on two occasions in 2024, and that her parents reported her involvement in a sex trafficking matter to healthcare providers.[2] Defendant argued "[t]his was clearly a mental health episode triggered by [her] prior encounters with men in

---

[2] The medical records relating to her parents' report are not included in the record on appeal.

authority." She "has severe mental health issues and if not for same, this incident would not have occurred. It is both probable and likely that under proper supervision with a mental health treatment component that this behavior . . . would not happen again."

On January 8, 2025, defendant moved to compel her admission to PTI. On February 3, 2025, the State objected to defendant's application finding she failed to show extraordinary and compelling circumstances justifying her admission. It specifically considered each of the factors set forth in N.J.S.A. 2C:43-12(e). The State acknowledged defendant's mental health history and noted her inpatient "admissions resulted from defendant's violent attack of her roommate . . . and her family members" and concluded her "'continuing pattern of anti-social behavior' is quantifiable and continuing, [as] outlined in her own exhibits."

It determined "defendant's explanation for her behavior is a stretch at best" and she "present[ed] no evidence besides her parents' belief regarding her involvement in that sex trafficking matter." "There simply is no justification for her criminality in the present matter[,]" and she was "afforded multiple opportunities to obtain treatment, most notably, when she was released after her arrest" but "squandered that opportunity as she has done in the past."

A-1790-24

On February 5, the court heard oral argument. On February 14, it entered an order granting defendant's motion, supported by a written opinion. The court determined "[t]he State did consider each factor," but disagreed with its evaluation and weighing of the relevant factors. As to factors one, N.J.S.A. 2C:43-12(e)(1), the "nature of the offense," and two, N.J.S.A. 2C:43-12(e)(2), the "facts of the case," it disagreed with the State's evaluation because "[d]efendant was in her vehicle alone, not under the influence, not involved in any motor vehicle or pedestrian accident, and the law enforcement officer was not seriously injured." Also, "the State regularly permits defendants charged with [second-]degree crimes admission into PTI with a plea."

The court concluded "it is clear . . . the State does not believe defendant was abducted and gives no weight to that claim." "However, even if the abduction did not occur, that would speak to the fragility of defendant's mental health and her subsequent psychiatric hospitalizations, which the State also appears to discount."

As to factor three, N.J.S.A. 2C:43-12(e)(3), the "motivation and age of defendant," the court conceded "[i]t is clear that defendant did not perform well while on pretrial release. In fact, this court granted the State's application to revoke her release." The court disagreed with the weight the State afforded to

7

factor three based on her noncompliance with mental health treatment because "it is less clear what specifically about defendant's noncompliance during her inpatient psychiatric hospitalization suggests she would not be motivated to complete PTI."

The court did not agree with the State's evaluation of factors five, N.J.S.A. 2C:43-12(e)(5),[3] and six, N.J.S.A. 2C:43-12(e)(6),[4] because "[d]efendant argue[d] that with proper supervision with mental health treatment it is probable that this underlying behavior would not happen again" and "[t]he court agree[d]."

The court disregarded the State's evaluation of factor seven, N.J.S.A. 2C:43-12(e)(7), the "needs and interests of the victim and society," because "the court [was] unclear as to who considered this factor and to what extent, as the prosecuting attorney was the same attorney who initially approved the charges."

---

[3] "The existence of personal problems and character traits which may be related to the applicant's crime and for which services are unavailable within the criminal justice system, or which may be provided more effectively through supervisory treatment and the probability that the causes of criminal behavior can be controlled by proper treatment."

[4] "The likelihood that the applicant's crime is related to a condition or situation that would be conducive to change through [their] participation in supervisory treatment."

A-1790-24

The court "suggest[ed] that failure to clearly articulate the needs and interest of the victim and society, then weighs in favor of admittance into PTI."

As to factor nine, N.J.S.A. 2C:43-12(e)(9), the "applicant's criminal record," it noted defendant had a prior conviction in Pennsylvania for defiant trespass for which she was placed on probation but "[t]his fact, in and of itself, does not preclude . . . admission into the PTI program."

As to factor ten, N.J.S.A. 2C:43-12(e)(10), "[w]hether or not the crime is of an assaultive or violent nature, whether in the criminal act itself or in the possible injurious consequences of such behavior," the court noted "the risk of danger and injury was present," but discounted that because "[d]efendant assert[ed] her conduct was the result of a mental health episode and was neither assaultive nor violent."

It rejected the State's evaluation of factor eleven, N.J.S.A. 2C:43-12(e)(11), "consideration of whether or not prosecution would exacerbate the social problem that led to the defendant's criminal act[s]," because "[f]ormally prosecuting a defendant for criminality resulting from untreated mental illness would exacerbate the very real social problem of saddling otherwise law-abiding citizens deserving of a second chance with a criminal record." "This runs contrary to the public policy purpose expressly stated in the PTI statute."

9

As to factor fourteen, N.J.S.A. 2C:43-12(e)(14), "[w]hether or not the crime is of such a nature that the value of supervisory treatment would be outweighed by the public need for prosecution," the "court [found] that there is no public need to prosecute . . . defendant; rather, the public need is to give . . . defendant, and others similarly situated, a second chance consistent with the public policy purpose of PTI."

The court disagreed with the State's analysis of factor seventeen, N.J.S.A. 2C:43-12(e)(17), "[w]hether or not the harm done to society by abandoning criminal prosecution would outweigh the benefits to society from channeling an offender into" PTI. It concluded:

> This defendant is precisely the kind of person deserving of diversion. She has recent and serious symptoms associated with untreated mental illness, including diagnosis of psychosis and personality disorder. She has been in psychiatric treatment twice within a relatively short period of time. The cycle of mental illness, much like the cycle of addiction, including diagnosis, treatment, noncompliance with treatment, and decompensation, is not unusual. With appropriate support and services society will benefit from channeling this offender to a supervisory treatment program such as PTI.

The court determined "the State's decision subverts the underlying goals of PTI. Defendant has clearly and convincingly shown that the State's decision was a patent and gross abuse of discretion and a clear error of judgment."

10

On appeal, the State argues the court improperly found it abused its discretion in refusing to consent to defendant's admission to PTI. We review the court's reversal of the State's decision de novo, applying the same standard as the trial court. State v. Waters, 439 N.J. Super. 215, 226 (App. Div. 2015). Judicial review of a prosecutor's denial of PTI is "severely limited" and "serves to check only the 'most egregious examples of injustice and unfairness.'" State v. Negran, 178 N.J. 73, 82 (2003) (quoting State v. Leonardis, 73 N.J. 360, 384 (1977)).

Because defendant was charged with a second-degree crime for which there is a presumption of incarceration, she was "ineligible for [PTI] without prosecutor consent to consideration of the application." R. 3:28-1(d)(1). She was therefore required to include with her application "a statement of the extraordinary and compelling circumstances that justify consideration of the application notwithstanding the presumption of ineligibility based on the nature of the crime charged." R. 3:38-3(b)(1).

Deciding whether to permit diversion to PTI "is a quintessentially prosecutorial function." State v. Wallace, 146 N.J. 576, 582 (1996). "Prosecutorial discretion in this context is critical for two reasons. First, because it is the fundamental responsibility of the prosecutor to decide whom to

prosecute, and second, because it is a primary purpose of PTI to augment, not diminish, a prosecutor's options." State v. Nwobu, 139 N.J. 236, 246 (1995) (citation omitted).

Accordingly, courts give prosecutors "broad discretion" in determining whether to divert a defendant into PTI. State v. K.S., 220 N.J. 190, 199 (2015). Indeed, a prosecutor's decision to reject a PTI application should "rarely be overturned." Wallace, 146 N.J. at 585 (1996) (quoting Leonardis, 73 N.J. at 380 n.10).

"'In order to overturn a prosecutor's rejection, a defendant must 'clearly and convincingly establish that the prosecutor's decision constitutes a patent and gross abuse of discretion.'" State v. Nicholson, 451 N.J. Super. 534, 553 (App. Div. 2017) (quoting State v. Watkins, 193 N.J. 507, 520 (2008)). "A patent and gross abuse of discretion is defined as a decision that 'has gone so wide of the mark sought to be accomplished by PTI that fundamental fairness and justice require judicial intervention.'" Watkins, 193 N.J. at 520 (quoting Wallace, 146 N.J. at 582-83). Such is the case only where it can be proven "that the [PTI] denial '(a) was not premised upon a consideration of all relevant factors, (b) was based upon a consideration of irrelevant or inappropriate factors, or (c)

12

amounted to a clear error in judgment. . . .'" State v. Lee, 437 N.J. Super. 555, 563 (2014) (quoting State v. Bender, 80 N.J. 84, 93 (1979)).

The court must presume that a prosecutor considered all relevant factors, absent a demonstration by the defendant to the contrary. Wallace, 146 N.J. at 584 (citation omitted). A court is not to assess the case "as if it stood in the shoes of the prosecutor." Id. at 589. "[J]udicial disagreement with a prosecutor's reasons for rejection does not equate to prosecutorial abuse of discretion so as to merit judicial override." State v. Motley, 369 N.J. Super. 314, 323 (App. Div. 2004) (State v. DeMarco, 107 N.J. 562, 566-67 (1987)).

Based on our de novo review, we are convinced the State's decision did not amount to a clear error of judgment or patent and gross abuse of discretion. In its February 3, 2025 letter objecting to defendant's admission to PTI, the State evaluated each of the relevant factors and provided an explanation including the factual support for the weight it afforded each factor.

Instead of applying a deferential standard of review as required, the court assessed the case as if it stood in the shoes of the State, disagreed with the weight afforded certain factors by the State, and imposed its own subjective weighing of the relevant factors. Furthermore, the court did not consider defendant was required to demonstrate extraordinary and compelling circumstances that

13

justified consideration of the application, and the State determined she failed to do that.

There is no basis to conclude the State's decision was "so wide of the mark sought to be accomplished by PTI that fundamental fairness and justice require judicial intervention." Watkins, 193 N.J. at 520 (quotation omitted). We are satisfied the State appropriately exercised its broad discretion to deny defendant's PTI application, and there is no reason to disturb that decision. Therefore, we vacate the trial court's February 14, 2025 order enrolling defendant into PTI.

Reversed, vacated, and remanded. We do not retain jurisdiction.

I hereby certify that the foregoing is
a true copy of the original on file in
my office.

*M.C. Harley*

Clerk of the Appellate Division

14                                                          A-1790-24