**RECORD IMPOUNDED**

NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-0790-18T1

STATE OF NEW JERSEY,

      Plaintiff-Respondent,

v.

L.G.-M.,[1]

      Defendant-Appellant.

<div style="border:1px solid black; text-align:center;">

**APPROVED FOR PUBLICATION**

**February 10, 2020**

**APPELLATE DIVISION**

</div>

Submitted January 14, 2020 – Decided February 10, 2020

Before Judges Fisher, Gilson and Rose.

On appeal from the Superior Court of New Jersey, Law Division, Monmouth County, Indictment No. 14-12-2073.

Joseph E. Krakora, Public Defender, attorney for appellant (Monique D. Moyse, Designated Counsel, on the brief).

Christopher J. Gramiccioni, Monmouth County Prosecutor, attorney for respondent (Mary Rebecca Juliano, Assistant Prosecutor, of counsel and on the brief).

---

[1] We use initials to protect the privacy of the victim and witnesses.

The opinion of the court was delivered by

ROSE, J.A.D.

Defendant L.G.-M. – a non-citizen of the United States – appeals a Law Division order denying his petition for post-conviction relief (PCR) without an evidentiary hearing. On appeal, defendant challenges his attorney's effectiveness prior to trial, claiming counsel failed to advise him about the immigration consequences of pretrial intervention (PTI). The issue is one of first impression in New Jersey.

Because we are persuaded defendant established a prima facie claim that the advice he received from trial counsel fell below professional norms, and we cannot conclude on the record before us whether defendant was prejudiced by his attorney's alleged ineffectiveness, we reverse and remand for an evidentiary hearing. See Strickland v. Washington, 466 U.S. 668, 700 (1984) (recognizing a defendant seeking PCR must demonstrate: (1) the deficiency of his counsel's performance; and (2) prejudice to his defense, to warrant a hearing); see also State v. Fritz, 105 N.J. 42, 58 (1987) (adopting the Strickland two-pronged analysis in New Jersey).

Where, as here, the trial court does not conduct an evidentiary hearing on a PCR petition, we may review de novo the factual inferences the court has

drawn from the documentary record.  State v. O'Donnell, 435 N.J. Super. 351, 373 (App. Div. 2014).  We summarize that record as follows.

Seeking asylum, defendant immigrated to the United States from Guatemala in 2012, when he was twenty-two years old.  Two years later, he was charged in a Monmouth County indictment with third-degree endangering the welfare of a child and fourth-degree criminal sexual contact; and issued two summonses for lewdness, a disorderly persons offense.  The charges stemmed from defendant's encounter with three teenage girls while swimming in the ocean in Belmar:  defendant allegedly exposed his penis to the trio, then grabbed the vagina and buttocks of one of the teens.

Defendant rejected the State's plea offer and declined the opportunity to apply for PTI notwithstanding his eligibility to do so without the Prosecutor's consent.  Before testimony began on the trial date, counsel told the judge he "had many opportunities to discuss the PTI program with [his] client[,]" but defendant did not wish to apply.  Counsel said he "explained to [defendant] the advantages and maybe the disadvantages of . . . PTI but [defendant] feels confident that he wants to move forward with this trial at this moment."  Absent from the record is any indication that trial counsel advised defendant about the immigration consequences of PTI.

The trial judge then engaged defendant in the following colloquy:

> THE COURT: . . . [T]here is a procedure called [PTI]. Okay? And it appears you are eligible for that since you have no prior record of any offense . . . . If you were to successfully complete . . . PTI . . . there would be a suspension of the prosecution and the charges could be dismissed against you. Now, you've talked to your lawyer about that?
>
> []DEFENDANT: Yes.
>
> . . . .
>
> THE COURT: [PTI] . . . would not require as I understand it, there's no demand that you plead guilty so you could participate in PTI, and if you are successful, then the charge[s] would be dismissed. Do you understand that?
>
> []DEFENDANT: I do.
>
> THE COURT: All right. Do you wish to apply for PTI or do you wish to accept the prosecution's offer of . . . noncustodial probation?
>
> []DEFENDANT: I decide to continue on with the matter [sic].
>
> THE COURT: You don't want to apply for PTI even though that could result in dismissal of the charge[s]; is that correct?
>
> []DEFENDANT: Correct.

Defendant waived his right to a jury trial and was convicted as charged by the trial judge, who sentenced him to an aggregate six-month jail term on May

4

19, 2016. In addition to fines and penalties, the judge imposed parole supervision for life and registration as a sex offender under Megan's Law. Defendant withdrew his direct appeal. In December 2017, defendant was detained in federal immigration custody.[2]

Four months later, defendant filed a PCR petition through counsel.[3] In support of his petition, defendant provided his own certification, and certifications of his PCR attorney and his current immigration attorney. Defendant claimed he met with his first immigration attorney one month after he was arrested. According to defendant, that attorney did not render "any immigration advice but she referred [him] to trial counsel." Defendant elaborated:

> As far as PTI, I thought that I would have to declare myself guilty. [Trial counsel] always said that I had a strong case. If he had explained to me that it was a weak case, I would have NOT taken the case to trial. There was a language barrier and although my sister did the translating, she was very young at the time.

---

[2] As of the filing of defendant's merits brief in April 2019, defendant remained in federal custody awaiting removal.

[3] Before defendant was placed in federal custody, he had filed a PCR petition that was dismissed without prejudice for his failure to attend "multiple" initial conferences.

A-0790-18T1

> [Trial counsel] never told me anything about the immigration consequences. Based on what he told me, I thought we had a strong case and would win so I didn't think there would be any immigration problems. If he had said that my defense was implausible and that I would be deported if we lost then I would have taken any alternative disposition in order to avoid being deported back to Guatemala. A place that I fled from and sought asylum in the United States [sic].

PCR counsel certified he contacted trial counsel, who confirmed he "did not provide any immigration advice" to defendant. Trial counsel acknowledged defendant's "family members translated for him" during their meetings. PCR counsel also contacted defendant's first immigration attorney, who confirmed "she did not provide any immigration advice" to defendant and "merely referred him" to trial counsel. Defendant's present immigration counsel likewise swore she spoke with defendant's first immigration attorney, who said she told defendant "she did not handle criminal immigration cases, and that he needed to hire a criminal defense attorney." Trial counsel was among the three names that the first immigration attorney gave to defendant.

Following oral argument, the PCR judge, who was not the trial judge, issued a written decision, denying defendant's petition. Relevant here, the judge determined the United States Supreme Court's seminal decision in Padilla v.

Kentucky,[4] and its New Jersey progeny did not apply here because defendant did not enter a guilty plea. The judge also determined defendant failed to demonstrate prejudice under the second Strickland prong. Accordingly, the judge declined to address whether counsel was ineffective under the first Strickland prong. This appeal followed.

On appeal, defendant limits his ineffective assistance of counsel claims to two points for our consideration:

POINT ONE

[DEFENDANT] IS ENTITLED TO RELIEF ON HIS CLAIM THAT HIS ATTORNEY RENDERED INEFFECTIVE ASSISTANCE OF COUNSEL DURING PLEA NEGOTIATIONS.

POINT TWO

IN THE ALTERNATIVE, [DEFENDANT] IS ENTITLED TO AN EVIDENTIARY HEARING ON HIS CLAIM THAT HIS TRIAL ATTORNEY RENDERED INEFFECTIVE ASSISTANCE OF COUNSEL DURING PLEA NEGOTIATIONS.

We find insufficient merit in the arguments defendant raises in point I to warrant discussion in a written opinion beyond the following brief comments. R. 2:11-3(e)(2).

---

[4] 559 U.S. 356 (2010).

For the first time on appeal, defendant contends trial counsel was "per se" ineffective under United States v. Cronic, 466 U.S. 648, 659 (1984), "by failing to inform him of the deportation consequences of rejecting PTI, such that he proceeded to trial based on this misadvice, was convicted and incarcerated, and is being held for imminent deportation." Because defendant failed to raise that contention before the PCR judge, we have reviewed the judge's decision for plain error, Rule 2:10-2; State v. Gore, 205 N.J. 363, 383 (2011), and conclude trial counsel's alleged errors were not so severe as to "trigger[] a presumption of prejudice . . . ." State v. Miller, 216 N.J. 40, 70 (2013) (observing "only an extraordinary deprivation of the assistance of counsel triggers a presumption of prejudice").

Turning to defendant's point II, merely raising a claim for PCR does not entitle a defendant to an evidentiary hearing. State v. Cummings, 321 N.J. Super. 154, 170 (App. Div. 1999). Rather, trial courts should grant evidentiary hearings only if the defendant has presented a prima facie claim of ineffective assistance of counsel under the Strickland two-pronged test, material issues of disputed fact lie outside the record, resolution of the issues necessitate a hearing, Rule 3:22-10(b); State v. Porter, 216 N.J. 343, 355 (2013), and when "the attorney's testimony may be required[,]" State v. Preciose, 129 N.J. 451, 462

8

(1992). We review a trial court's decision to grant or deny a defendant's request for a hearing under an abuse of discretion standard. State v. Russo, 333 N.J. Super. 119, 140 (App. Div. 2000). But, we review de novo the PCR court's conclusions of law. State v. Nash, 212 N.J. 518, 541 (2013).

It is now well-settled that a defense attorney "must tell a client when removal is mandatory – when consequences are certain –" in order to provide effective assistance of counsel. State v. Gaitan, 209 N.J. 339, 380 (2012); see also Padilla, 559 U.S. at 369. Accordingly, "when counsel provides false or affirmatively misleading advice about the deportation consequences of a guilty plea, and the defendant demonstrates that he would not have pled guilty if he had been provided with accurate information, an ineffective assistance of counsel claim has been established." Gaitan, 209 N.J. at 351.

Conversely, where "the law is not succinct and straightforward . . ., a criminal defense attorney need do no more than advise a noncitizen client that pending criminal charges may carry a risk of adverse immigration consequences." Padilla, 559 U.S. at 369; see also Gaitan, 209 N.J. at 381 (holding that where deportation is not mandatory, "counsel must highlight for noncitizen clients that entering a guilty plea will place them at risk of removal"). Failure by counsel to adhere to these requirements constitutes deficient

representation, satisfying the first prong of the Strickland/Fritz standard. See Padilla, 559 U.S. at 369; Gaitan, 209 N.J. at 380.

Our courts have not specifically considered whether Padilla and Gaitan require defense counsel to advise their clients whether – and under what circumstances – the successful completion of PTI would permit a defendant to avoid immigration consequences. Under the Immigration and Nationality Act (INA):

> The term "conviction" means, with respect to an alien, a formal judgment of guilt of the alien entered by a court or, if adjudication of guilt has been withheld, where – (i) a judge or jury has found the alien guilty or the alien has entered a plea of guilty or nolo contendere or has admitted sufficient facts to warrant a finding of guilt, and (ii) the judge has ordered some form of punishment, penalty, or restraint on the alien's liberty to be imposed.
>
> [8 U.S.C. § 1101(a)(48)(A) (emphasis added).]

Accordingly, where a defendant has neither acknowledged guilt, nor entered a guilty plea, successful completion of PTI would not constitute a "conviction" under the INA. See Pinho v. Gonzales, 432 F.3d 193, 215-16 (3d Cir. 2005) (holding a conviction vacated on ineffective assistance of counsel grounds was not considered a "conviction" that would otherwise mandate deportation under the INA because defendant was ultimately admitted into New

Jersey's PTI program without admitting guilt). Conversely, the successful completion of PTI, where a defendant has not pled guilty – but has acknowledged guilt – could result in removal.

Neither Padilla nor Gaitan expressly limits its holding to cases in which a defendant enters a guilty plea, and we decline to narrowly construe their application only to those dispositions. Instead, we interpret Padilla and Gaitan to impose an obligation upon defense attorneys to advise their clients of the potential immigration consequences of any criminal disposition whether that disposition will result from a guilty plea, trial, or diversionary program.

In addition to his own certified statements supporting his PCR petition, defendant submitted the certifications of his present immigration counsel and PCR counsel. Those sworn statements expound upon the trial record. For example, trial counsel told the judge on the first day of trial: "I informed [defendant] about the immigration consequences, in that I am not an immigration attorney. [Defendant] did inform me that he did speak to an immigration attorney regarding the consequences of deportation." Defendant also told the trial judge he had spoken with an immigration attorney.

But, defendant's certification in support of his PCR petition explains he was referring to the first immigration attorney who did not provide immigration

advice about his criminal charges; instead she referred defendant to trial counsel. Although the certifications of PCR counsel and defendant's present immigration counsel contain hearsay statements about their conversations with trial counsel and the first immigration attorney, they corroborate defendant's prima facie claims.

We conclude an evidentiary hearing was necessary to assess credibility and further develop the facts underlying the advice rendered to defendant concerning the immigration consequences of PTI. See Porter, 216 N.J. at 353. Those conversations between defendant and his trial counsel and first immigration attorney are not part of the record. R. 3:22-10(b). Accordingly, defendant has set forth a prima facie showing of counsel's deficient performance under the first Strickland prong. 466 U.S. at 687; see also Padilla, 599 U.S. at 374; Gaitan, 209 N.J. at 380.[5]

Turning to the second prong of Strickland, we disagree with the PCR judge that defendant was unable to demonstrate prejudice. Relevant here, the

---

[5] Trial counsel's purported use of defendant's minor sister as an interpreter during their meetings raises further questions about counsel's effectiveness. As we have long observed "[a] language barrier between counsel and client is merely one circumstance probing the questions of whether the accused has been adequately represented by counsel." State v. Perez, 100 N.J. Super. 427, 430 (App. Div. 1968).

A-0790-18T1

PCR judge determined the record belied defendant's claim he was unaware of the removal consequences of his conviction because the trial judge had informed defendant he would likely be deported. The judge also found defendant's repeated assertions of innocence precluded PTI as a viable option.

We have recognized the distinct roles of the trial judge and counsel, concluding a "judge's statements may not be imputed to counsel. The judge is obliged to ascertain that a plea is entered voluntarily . . . . That obligation is related to, but distinct from the attorney's obligation to render effective assistance." State v. Blake, 444 N.J. Super. 285, 297 (App. Div. 2016). Indeed, during the plea cutoff status conference, the trial judge correctly stated he could not give defendant immigration advice. In any event, the judge only made defendant aware of the potential immigration consequences if defendant were convicted at trial; the judge did not discuss those consequences regarding the successful completion of PTI. The judge told defendant: "if you are found guilty of any of these charges . . . it may well and probably would, I would say almost certainly would, although I'm not giving you advice on immigration, have an effect on your status and I would expect would result in deportation."

Obviously, we cannot speculate and conclusively say defendant would have been accepted into the PTI program had he made a timely application. The

13

State repeatedly informed the trial court, defendant "certainly appears eligible to apply" to PTI based upon the degree of the charges. But on appeal, the State's merits brief contains a footnote stating: "For the reasons discussed above, this Office would not accept defendant into PTI." Those reasons included the nature of the charges, the extent to which defendant may pose a danger to others, the offenses were not "victimless," and the harm to society by abandoning prosecution where, as here, the charges carry the Megan's Law consequences of parole supervision for life and registration. Indeed, those factors bode against defendant's admission into the PTI program but, because defendant never applied for PTI, the summary statement contained in the State's footnote is not a formal rejection of defendant's application.

We acknowledge, as the PCR judge correctly observed, defendant maintained his innocence throughout the proceedings, including his post-conviction mental status evaluation, precluding the evaluator from "mak[ing] an assessment as to what his motivation may have been in the instant offense." Under Rule 3:28-5(b)(1),[6] "[e]nrollment of defendants who maintain their

---

[6] Rule 3:28-5(b)(1), effective July 1, 2018, replaced former Rule 3:28, which was in effect at the time defendant would have applied to PTI. The relevant portion of the current Rule contains identical language to Guideline 4 of former Rule 3:28.

innocence is to be permitted unless the defendant's attitude would render [PTI] ineffective." Because defendant claims his "limited ability to speak English and the absence of a translator" other than his minor sister when she was available, prevented him from understanding his attorney's "advice about what PTI actually was[,]" it is unclear from the record what advice trial counsel gave defendant regarding PTI, and whether those discussions impacted defendant's assertions of innocence.

Importantly, although deciding whether to permit diversion to PTI "is a quintessentially prosecutorial function[,]" State v. Wallace, 146 N.J. 576, 582 (1996), a prosecutor's decision is nonetheless subject to judicial review, see State v. K.S., 220 N.J. 190, 200 (2015) (recognizing "to overturn a prosecutor's decision to exclude a defendant from the program, the defendant must 'clearly and convincingly' show that the decision was a 'patent and gross abuse of . . . discretion.'"). We therefore decline to speculate whether defendant would have been admitted into the PTI program.

Because we conclude defendant has made a prima facie claim of ineffective assistance of counsel, we remand for an evidentiary hearing to determine whether defendant received adequate advice about PTI, his potential acceptance into PTI, and how deportation consequences would be impacted if

A-0790-18T1

he were accepted into PTI. <u>Preciose</u>, 129 N.J. at 462. If at the hearing, defendant satisfies his claim that the advice given fell below professional norms, the hearing should encompass, and the judge should determine, the probability of defendant's admission into the PTI program and the probability of whether admission would favorably impact the deportation consequences that would follow. <u>See</u> <u>Pinho</u>, 432 F.3d at 215-16; 8 U.S.C. § 1101(a)(48)(A). Defendant shall be permitted to supplement the record with any documentation that he otherwise would have provided in an initial application that would bear upon his acceptance into PTI. Defendant's conviction and sentence remain in force unless and until defendant satisfies both prongs of the <u>Strickland</u> analysis. We express no view on the merits of any of defendant's contentions, including his admission into the PTI program.

Reversed and remanded. We do not retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-0790-18T1